## PHIL EDWARDS v. THE STATE.

No. 22151. Delivered June 3, 1942.
Rehearing Denied (Without Written Opinion) October 14, 1942.

486

The opinion states the case.

*Mahan & Broughton,* of Childress, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of a mule and a mare. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant's first contention is that the evidence is insufficient to justify and sustain his conviction.

In order that this opinion may reflect the basis of our conclusion on the question presented, we deem it proper to recite the salient facts proven upon the trial.

L. W. Booth, an accomplice, testified in substance that on the 15th day of October, 1936, he met the appellant, Phil Edwards, in the town of Childress. He also met Burl Tate at the pool hall, who told him that Edwards knew a man who wanted some stock hauled. At this time Edwards came in and said the man lived at Dunlap. Booth told Edwards that he could not haul the stock because he did not have any "commercial tags, only farm tags," whereupon appellant said: "Haul them at night." Thereupon he and appellant got into Booth's

truck, went to Dunlap and saw Mutt McClendon, the party who Edwards said wanted the stock hauled; that when they arrived at McClendon's home, appellant went into the house and talked to McClendon for about thirty or forty minutes; that McClendon took them to a pasture where his stock was; that they got out of McClendon's car and walked over to the pasture to look for a place to load the animals. From there they went to a gin and talked to the owner thereof. McClendon told them to come back the next day when he would have the stock in the lot ready to load. On the afternoon of the next day Booth met appellant and Burl Tate at the pool hall, where all three got into Booth's truck and went to McClendon's place and found him sowing wheat east from his home; that McClendon told them that he could not get the stock in his pasture up, but there was some stock north from there in another pasture which was "hot," which they could get; that appellant, Tate and McClendon then got into the latter's car and drove north some distance, then got out with ropes and went down a draw, while he (Booth) went to Paducah to get some air in a casing and then went back to the place which had been selected by them to load the animals where he waited for appellant, Tate and McClendon to bring the animals; that about sundown appellant and Tate brought the animals to the designated place where they loaded them in the truck and in the nighttime carried them to the auction ring at Wellington where the witness sold the animals under an assumed name. The animals consisted of two black mules, a blue or gray filly, and a bay filly; that he (Booth) retained $25.00 of the proceeds of the sale of said animals and gave the balance to appellant.

Mr. Whitner testified that on the 19th day of October he missed some mules and mares from his pasture; that in his search for them he found a place in Grandpa McClendon's pasture where they were loaded; that he recovered the animals at Wellington from the parties who had purchased them; that on an afternoon about the time in question he saw appellant, Tate and another man, whom he took to be Mutt McClendon, in his pasture going along a creek or draw and he thought they were bird hunting.

Mr. Caruth testified that on the afternoon of the day in question, appellant, McClendon and another party, who later proved to be Booth, came to his gin in a truck.

Mr. Skipper testified that in October, 1936, he worked at a feed mill located near George Wattenberger's lot in Wellington; that he saw appellant and Tate on the morning of October 17th; that they came by the place where he was at work and they were leading a pair of mules and a pair of mares; that they went on to the lot and tied them to the fence; that appellant was wearing a pair of blue overalls, a blue shirt and a cap.

Mr. Wattenberger testified that on the morning of October 17th he saw appellant at his lot in Wellington, sitting on a rock; that he inquired of him whose stock they were, to which he replied that they belonged to a man with whom he was riding; that he did not know what his name was. The witness bought the mares from Booth and Ed Morgan bought the mules. Appellant disclaimed ownership of the animals. He told Wattenberger that he caught the man with the truck at Wheeler; that he was going to Lubbock to "pull bolls" and he was just riding with him.

Appellant did not testify but introduced some evidence to the effect that he was at home on the night in question.

The evidence, when properly analyzed, seems to corroborate the accomplice witness Booth in some of the essential facts testified to by him. That appellant, Booth and McClendon were together in the afternoon at the gin is shown by the owner thereof. That appellant, Tate and McClendon were together on the day in question in Whitner's pasture from which the animals were taken is proven by Whitner. That Booth, Tate and appellant were at the stock yards at Wellington early on the morning of October 17th and that appellant and Tate led two mares and two mules to Mr. Wattenberger's yard and tied them to a fence is shown by the testimony of Mr. Skipper. Of course, Skipper did not describe the mares other than that they were two mares; nor did he describe the mules other than that they were mules. However, we think that since appellant and Tate were seen in possession of two mares which Wattenberger bought and two mules which Morgan bought (which were the animals stolen from Whitner) they were placed in possession of recently stolen property. Again, when Wattenberger came to his stock yard on the morning in question, he saw these animals tied near his lot and appellant was sitting there on a rock. He inquired of appellant if they were his stock to which he replied no, that they belonged to a man with whom he was

riding but he did not know his name. What stock were they talking about? They must have been talking about the mules and mares which appellant and Tate led up there and tied and which Wattenberger and Morgan purchased from Booth because those were the animals present which Wattenberger contemplated purchasing. That appellant was referring to the same animals is shown by the fact that he said they belonged to a man with whom he came to Wellington in a truck. Who was that man? It was Booth. Consequently, appellant and Booth are shown to be in the possession of the recently stolen property, which standing unexplained, is a circumstance from which an inference of guilt arises. In our opinion, the evidence, as reflected by the record, is sufficient to sustain his conviction as a principal in the theft.

Appellant in due time objected to the court's instruction as to who are in law principals. He also objected to the court's charge wherein the court applied the law of principals to the facts in the case. He based his objection on the ground that the evidence did not raise the question of principals. We note that the court, in his charge, defined principals as the same is defined by statute, which was sufficient. His contention that the facts proven do not constitute him a principal is: First, that if he is guilty at all he is guilty of the actual taking; second, that the evidence fails to show Booth to be a principal, but only an accomplice; and third, that the court erred by instructing the jury that if appellant acted with Mutt McClendon, Burl Tate and L. W. Booth, or either of them, in the commission of the theft, he would be a principal, thus charging his connection with them disjunctively, when the charge should have limited his acting with them conjunctively. It is our opinion that the evidence shows Booth to be a principal in the commission of the offense. He heard McClendon tell them that the animals were "hot" but notwithstanding such information he furnished the truck in which to carry them to Wellington; he helped load them and he sold them under an assumed name. These facts bring him within the category of a principal.

It will be noted from the brief statement of the facts as hereinabove set out that there is sufficient evidence to show that appellant was acting with the other parties in the commission of the offense so as to constitute him a principal.

We note that the court instructed the jury that if they believed from the evidence, beyond a reasonable doubt, that

the defendant, Phil Edwards, either alone or while acting with Mutt McClendon, or Burl Tate or L. W. Booth, or either or all of them, as a principal, as the term "principal" is defined in his charge, "did in Cottle County, Texas, on or about the 16th day of October, A. D., 1936, unlawfully and fraudulently take from the possession of John Whitner one horse and one mule, * * * and unless you so find, or if you have a reasonable doubt thereof, you will acquit him." The charge instructed the jury that if they found from the evidence, beyond a reasonable doubt, that he acted with either one or all of them, it constituted him a principal. This was a correct pronouncement of the law and a fair application thereof to the facts.

Appellant next complains of the court's charge on alibi, which is as follows:

"Among other defenses set up by the Defendant is what is known as an Alibi; that is, that if the offense was committed as alleged, that the defendant was, at the time of the commission thereof, at another and different place from that at which such offense was committed, and therefore was not and could not have been the person who committed the same."

"Now, if the evidence in this case raises in your minds a reasonable doubt as to the presence of the defendant, Phil Edwards, at the place where the offense was committed, if any was committed, at the time of the commission thereof, you will find the defendant 'not guilty'."

His objection to the court's charge on the issue of alibi is that it is too comprehensive in this: that it failed to confine the jury in their determination of that issue as to whether or not he was at his home in Childress at the time of the commission of the alleged offense. To have so limited the jury would have ignored appellant's statement to Wattenberger that he was going to Lubbock to "pull bolls" and caught at Wheeler the truck in which the animals were transported. If he caught the truck at Wheeler, he was not at home, nor was he with Booth, Tate and McClendon where the offense was committed. Consequently appellant has no just cause for complaint of a charge which was more liberal and favorable to him than the one he desired.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.