Lloyd Leon SCOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 42491.

Court of Criminal Appeals of Texas.

Jan. 14, 1970.

Rehearing Denied March 18, 1970.

J. O. Duncan, Gilmer, Al Clyde, Fort Worth, for appellant.

Jack D. Young, Dist. Atty., Muleshoe, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The offense is theft by false pretext; the punishment, two years.

In his first ground of error, the appellant contends that the evidence is insufficient to support the conviction.

The testimony of the state is as follows:

Mrs. J. H. Steelman, an 86-year-old resident on a farm in Parmer County, testified that about 12 o'clock (noon) August 11, 1967, some men came to her house, and she talked with one of them whose name she could not recall. Mrs. Steelman further testified that lightning rods on her house and her grandson's house (Eddie Gale Steelman) which was located nearby had been put up at the same time; that the man who came in the house told her that, "The company sent him out there to check the lightning rods and to repair them," and that he would inspect them and charge for the cost of repair, but not for the labor.

Mrs. Steelman testified in part as follows:

"A. * * * when they checked the house, why they found, you know, they had some repair work to do, and I had—I told them, this same man, I said: Well, the same man put on my lightning rods that put on my grandson's down there, and if his don't need checking or don't need repairing, I don't think I will have mine done either. I will just consider mine not done, too. Something like that.

"Q. Uh huh.

"A. And he went down there and checked them.

"Q. All right. Did you allow them to repair your lightning rods at that time?

"A. No. I waited until he came back. He went down there to see my grandson to see whether his needed repairs or not.

"Q. All right. You told him, then, you wouldn't let him repair them?

"A. That's right.

"Q. Unless your grandson's needed some?

"A. Yes, that I wouldn't have the work done.

"Q. Did they go to doing anything at that time?

"A. Well, they had started, and I told them to wait, that I wasn't going to have nothing done to them if Gale wasn't going to have anything done to his."

While testifying at the trial, Eddie Gale Steelman identified the appellant as the man who came about 12 o'clock (noon) August 11, 1967, to his house which is about 200 feet north of the house of Mrs. J. H. Steelman, who is his grandmother and asked if he could inspect the lightning rods on his house. After about a fifteen minute inspection, the appellant told Eddie Gale that his lightning rods were all right, but never mentioned Mrs. J. H. Steelman's lightning rods except that they were checking them. The appellant said nothing to Eddie Gale about repairing Mrs. Steelman's lightning rods and did not get his consent to do so.

Mrs. Eddie G. Steelman testified that the appellant was the person who came to her home on August 11, 1967, and asked her husband about checking the lightning rods on their house; and that after she went outside of the house she heard the appellant say, "They were just checking because the lightning had struck my husband's grandmother's house before, and they were just checking the lightning rods to see if they had grounded them, and they wanted to know if we wanted ours checked."

Mrs. J. H. Steelman further testified as follows:

"A. At that time, and then, when *he* came back from seeing my grandson about his lightning rods, well *he* told me Gale's lightning rods was put in right and were all right, but he (Eddie Gale) said to go ahead, though, that he didn't want—and checked mine, that he didn't want his grandma to get burned out, or something like that.

"Q. All right. Now, this man told you that Eddie Gale had told him that?

"A. Yes, *he* told me that.

"Q. All right.

"A. I think *he* checked Gale's, too. Anyway their lightning rods were all right down there, and he (Eddie Gale) said to go ahead and check mine.

"Q. Did he tell you that Eddie Gale had told him something to do with yours?

"A. No.

"Q. What did *he* say that Eddie Gale had said, if you remember?

"A. *He* said that Eddie Gale said just go ahead, that he (Eddie Gale) talked like he didn't want his grandmother to get burned out, with mine, you know, but—

"Q. Now, then, based upon this, what *he* told you, that Eddie Gale had told him, did you decide to let them do something?

"A. Yes. I decided then that I would let them go ahead, and I told *him,* then, to go ahead and do what he done. * * *

"Q. And when *he* came back from your grandson's?

"A. Well, we were at the table when *he* came back from there. And we sat there and talked awhile, and we were still at the table, and *he* told me what my grandson said, and that their lightning rods were all right, and *he* told me that he (Eddie Gale) said to go ahead and check mine. And I told him, well, to go ahead. And *he* said he didn't want his grandma burned out, or something like that." (Emphasis added)

The evidence reflects that the men were at Mrs. Steelman's home about two or three hours, and then presented her a bill for $550 which she declined to pay; that she finally gave them a check for $400 signed Mrs. J. H. Steelman on a local bank which was presented for payment about 2 or 2:30 p.m., August 11, 1967, which was first paid by the use of some twenty dollar bills which had ink stains on them, and when the cashier was asked not to give those bills in payment of the check, other bills were used in making the payment.

According to Mr. and Mrs. Eddie Gale Steelman, only one man came to their house at noon on August 11 and asked to inspect the lightning rods on their house, and he was the appellant. The appellant then called another man who made the inspection. Mrs. Eddie Gale Steelman also testified that appellant told them they were just checking the lightning rods on Mrs. J. H. Steelman's house to see if they had grounded them.

The evidence fails to reveal the *name* of any person other than the appellant who appeared at either of the Steelman's houses at noon on August 11, 1967.

The appellant did not testify or offer any evidence in his behalf.

The court charged the jury upon the law applicable to circumstantial evidence.

■ The facts and circumstances in evidence are sufficient to support the conviction.

The second ground of error is that the court's charge authorized the conviction of the appellant as a principal together with another person or persons and did not require the jury to find he acted with Tommie Joe Seagraves and Emett Green.

The appellant and Seagraves and Green were jointly indicted, but appellant's motion for severance was granted. There is no proof identifying Seagraves and Green as being present at the time of or participating in any manner in the commission of the offense.

In submitting the case to the jury, the court made appellant's guilt depend upon the finding that he "acting either alone or as a principal together with another person or persons" committed the offense.

■ The evidence is sufficient to authorize the finding that the appellant was present and the principal actor in the commission of the offense. In light of the charge which authorized the conviction if the appellant was acting alone and the evi-

dence in support thereof, no error is shown. 16 Tex.Jur.2d 167, Sec. 55; 31 Tex.Jur.2d 651, Sec. 104; Ross v. State, 60 Tex.Cr.R. 547, 132 S.W. 793; Durham v. State, 112 Tex.Cr.R. 395, 16 S.W.2d 1092. The second ground of error is overruled.

The appellant in his third ground of error contends that he was denied his right to the confrontation of the witnesses against him. We have examined the testimony referred to by the appellant, and it does not support his contention. The appellant's third ground of error is overruled.

The fourth ground of error is that the trial court failed to charge the jury on the converse of appellant's defense and the state's theory.

The appellant did not testify or offer any testimony in his behalf. The court's charge did not submit any affirmative defense. There are no objections to such failure and no requested charges thereon were submitted. In its charge, the court fairly and adequately submitted the converse of the state's theory. The fourth ground of error is overruled.

The appellant in his fifth and sixth grounds of error complains of the admission of testimony hearsay to the appellant by Eddie Gale Steelman and Mrs. J. H. Steelman concerning the original price of their lightning rod systems. The evidence of the state reveals that there were little if any repairs done to Mrs. J. H. Steelman's lightning rod system and that she paid $400 for the repairs. The testimony complained of was admissible on the issue of whether there was a fraudulent intent to deprive Mrs. Steelman of her money. The fifth and sixth grounds of error are overruled.

The other grounds of error presented have been examined and considered and overruled.

The judgment is affirmed.