Samuel Richard **JOHNSON, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 094–86.

Court of Criminal Appeals of Texas, En Banc.

Oct. 7, 1987.

State's Motion for Rehearing Denied Nov. 4, 1987.

---

Douglas M. O'Brien (Court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kathlyn Giannaula, Terry G. Wilson & Richard Anderson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

CLINTON, Judge.

Appellant was convicted by a jury of the offense of aggravated kidnapping under V.T.C.A. Penal Code, § 20.04(a)(1). The trial court assessed punishment at fifty years confinement in the Texas Department of Corrections.

In his only ground of error on appeal to the Fourteenth Court of Appeals appellant complained that the trial court erred in refusing to respond to his trial objection that the jury charge failed "to allege the specific acts that the State is relying on to make him a party. It does not say depending on solicitation, encouragement, direction, aid or attempt to aid one Mr. Clifford in the commission of this offense." See V.T.C.A. Penal Code, § 7.02(a)(2). Though the State expressly invited the jury in its summation thus to find appellant guilty as a party to the offense, the court of appeals held in an unpublished opinion that any error in failing to apply the law of parties to the facts was harmless. *Johnson v. State*, 702 S.W.2d 691 (Tex.App.— Houston [14th] 1985). The court of appeals found "[t]here is a reasonable inference that appellant was one of the two male guards who actually restrained the complainant[,]" and thus, that the evidence supported a jury finding that appellant was guilty as a primary actor. Rather than relying on our opinion in *Govan v. State*, 682 S.W.2d 567 (Tex.Cr.App.1985), as direct authority in support of its holding, however, the court of appeals cited our subsequent opinion in *Watson v. State*, 693 S.W. 2d 938 (Tex.Cr.App.1985), for the proposition that the jury charge given actually "benefits appellant[,]" in that it "simply increased the [S]tate's burden with respect to appellant's culpability."

In his petition for discretionary review appellant now challenges the court of appeals' conclusion that the charge given actually inured to his benefit, and continues to insist that under *Jaycon v. State*, 651 S.W.2d 803 (Tex.Cr.App.1983) and *Apodaca v. State*, 589 S.W.2d 696 (Tex.Cr.App.1979), he was entitled to a charge adequately

applying the law of parties to the facts of the offense. We granted appellant's petition in order to determine whether the court of appeals has rendered a decision that conflicts with applicable decisions of this Court. Tex.R.App.Pro., Rule 200(c)(3).

## I.

At approximately 1:30 p.m. on the afternoon of February 23, 1984, Marjorie Lemieux was accosted by a single masked assailant in the driveway of her home in Houston. Her wrists and ankles were bound with tape, a pillowcase was secured over her head, and she was placed under a carpet in the back seat of her own Jaguar and driven away. For the next 27 hours two men, one her original abductor and the other a man with what she described as a "Tex-Mex" accent, drove her around in the Jaguar, occasionally together but usually singly, in shifts of three to four hours. Between shifts the car would stop at a rendezvous point, where the complainant had a distinct sense that other people were present—in fact, her original abductor told her there were four people there in a van, two women and two men, and he "insinuated" that "these people were in control of what was going on, that he was following orders." Contrary to the finding of the court of appeals, there is no indication that either of complainant's two "guards" was appellant.

Sometime between 8:00 and 10:00 a.m. on the morning of February 24th, while the man with the "Tex-Mex" accent was driving, yet a third man got into the Jaguar as it sat parked in some dark, presumably covered area. This man refused to talk to complainant, but he had a persistent cough which set him apart from the others. For the next 45 minutes the third man got in and out of the car, apparently conducting ransom negotiations from a nearby telephone. At times when he was in the car, complainant could hear the sound of "a pencil writing on paper" coming from his side of the front seat.

Complainant's husband, Henry Lemieux, had been contacted by telephone around 3:30 p.m. on the 23rd at his place of business. The caller demanded a $200,000 ransom. Lemieux immediately notified the police and also the F.B.I., who installed a recording device in his home telephone. Over the next 24 hours eight calls involving ransom negotiations, first from a male voice and later from what sounded like a female voice, were recorded. The first voice was shown to belong to one Harry Arnold Clifford. Appellant's sixteen year old girlfriend identified the second as appellant's imitation of a female voice, which she had heard on many occasions. On the afternoon of the 24th, several more calls were placed to designated public telephones, but these calls could not be recorded. The last of these calls involved a third, once again male voice. From listening to appellant speak in the courtroom, Lemieux was able to identify this third voice as his also.

Lemieux was instructed to place the ransom money in a van which he owned, and to leave the van parked at the Airport Holiday Inn. This was accomplished by about 5:00 p.m., and complainant was set free. The van was subsequently stopped a short distance from the motel, and its sole occupant, Clifford, was arrested. Officers recovered a gray canvas bag, which together with some of its contents, had been taken from complainant's Jaguar.[1] Among the items found in the bag was a notepad belonging to complainant, on which both appellant's and Clifford's fingerprints were found. A documents examiner for the Houston Police Department found "definite indications" some of the writing on the pad, relating to the kidnapping and ransom demands, was in appellant's handwriting. On the pad was a reference to "Peggy," which was shown to be a fictitious name for appellant. Complainant testified this writing had not appeared on the notepad prior to her abduction. Additionally, half a dozen

---

1. Also found in the van was the ski mask worn by the original abductor and a jacket which a police officer had observed one of complainant's abductors to be wearing immediately before she was released. These provide fairly compelling circumstantial indicators that Clifford was one of complainant's "guards."

pages of looseleaf notebook paper which again displayed appellant's fingerprints and handwriting were discovered in Clifford's pocket.

Appellant's fingerprints were also obtained from a coke bottle in Clifford's car, which had been left in the airport parking lot at about 4:30 a.m. on the morning of February 24th.

During its final argument the State emphasized appellant's various connections to Clifford. It was also asserted that appellant had been the man with the cough who had been in and out of the Jaguar for 45 minutes on the morning of February 24th, composing the messages that were later found in the van. Finally it was stressed that appellant's voice was identified as that of one of the ransom negotiators. This, it was urged, provided direct evidence of appellant's guilt *as a party* to the offense:

"... that's not circumstantial evidence. That's direct examination [sic: evidence?] under the law. There is no need to remove any other reasonable hypothesis.

\* \* \* \* \* \*

"I submit, ladies and gentlemen, we have proved to you beyond a reasonable doubt, any doubt at all, that [appellant] *participated in this as a party* in the kidnapping of Mrs. Lemieux." [2]

Because any evidence that appellant *personally* "secreted" or "held" complainant, see V.T.C.A. Penal Code, § 20.01(2)(A), *was* in fact purely *circumstantial*, it appears the State preferred that the jury proceed to verdict on a theory that appellant was criminally responsible as a party to the conduct of others, particularly Harry Arnold Clifford.

## II.

In *Watson v. State*, supra, this Court concluded it was error to have charged the jury that the defendant could be found guilty of burglary of a habitation "acting either *alone* or as a party to the offense," because we found no support in the record for a jury verdict that defendant acted as a primary actor in the entry of the premises. Review of the jury argument showed "the State was proceeding solely on a theory that [defendant] was guilty as a party." *Id.*, at 941. Nevertheless the Court found this error harmless under the "some harm" standard of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), relating to error which is preserved by timely objection. Noting that a charge on the law of parties normally benefits the State inasmuch as it "enlarges a defendant's criminal responsibility[,]" the Court found that "in the converse, a charge requiring the jury to find that a defendant acted alone increases the State's burden and thus benefits the defendant." 693 S.W.2d at 941–42.[3]

■ Simply put, the decision in *Watson* cannot stand as authority, direct or analogous, for a finding of harmless error in the instant cause. The court of appeals seems to have reasoned that, because in its view there was evidence appellant was guilty as a primary actor, any reference to the law of parties in the charge was superfluous and could only have operated to increase the State's burden to appellant's advantage. However, addition of the law of parties will never increase the State's burden of proof. On the contrary, as *Watson* itself reiterated, submission of the law of parties under § 7.02(a)(2), supra, invariably makes it possible for the State to obtain a conviction on less than sufficient evidence to establish the accused actually committed an offense as otherwise defined in the Penal Code. In *Watson* the State could not have obtained conviction of defendant as a primary actor. It was therefore held that having required as an alternative to the theory of guilt as a party that the State actually establish his guilt as a primary actor could only have "benefited" the defendant. But *Watson* is inapposite here. That the evidence in a given case may be deemed legally sufficient to support conviction of the accused as a primary actor will not necessarily render a failure to apply

---

**2.** All emphasis supplied unless otherwise indicated.

**3.** The instant writer did not participate in the decision in *Watson* and does not now concur in its rationale.

the law of parties to the facts of the case over objection harmless, much less beneficial—especially where, as here, the State indicates it would prefer to proceed on the relatively simpler endeavor of proving guilt as a party.

Consequently we reject the court of appeals' reliance upon *Watson* as a basis of analysis for determining harmfulness *vel non* in the instant cause. Instead we proceed to analysis under this Court's decision in *Govan v. State,* supra, its precedents, and our more recent pronouncements in *Almanza v. State,* supra, and *Black v. State,* 723 S.W.2d 674 (Tex.Cr.App.1986).

### III.

One way to dispose of the appellant's contentions in fairly short order would be to adhere quite literally to the holding in *Govan,* and, finding that the jury was entitled to believe appellant was the third man in the Jaguar, and that his conduct amounted to "holding" of the complainant for purposes of V.T.C.A. Penal Code, §§ 20.04(a) and 20.01(2)(A), conclude that the evidence "clearly supported" a jury verdict of guilt as a primary actor. On the state of this record, however, we do not perceive the question of "some harm" under *Almanza* to be so readily resolved.

The contention on appeal and on petition for discretionary review in *Govan* was essentially the same as that in the present case: the trial court erred in failing to apply the law of parties to the facts of the case. The State managed subtly to shift the focus of inquiry, however, contending that because the "conviction did not depend upon the application of the law of parties," "the unnecessary inclusion of the abstract definition of the law of parties and the addition of the phrase 'acting alone or as a party as that term is defined herein' to the application paragraph of the jury charge was harmless error." 682 S.W.2d at 570. Relying upon a handful of cases deciding the issue as thus reformulated, this Court held, for the first time in these precise terms, that "because the evidence ... *clearly supports* [Govan's] guilt as a principal actor, the error of the trial court in charging on the law of parties was harmless." *Id.,* at 570–71. In *Black v. State,* supra, the holding of *Govan* was reprised. Additional authority was found in Article 36.19, V.A.C.C.P., as that provision was construed in *Almanza,* supra, subsequent to our opinion in *Govan.*

It is not altogether inappropriate that the Court should have recast the issue as it did in *Govan.* In the earliest case cited in *Govan* both contentions were raised—that the law of "principals," as it was known under prior codes, should not in any manner have been submitted in the charge, and that, in any event, having been submitted, albeit over objection, it should at least have been applied to the facts rather than simply charged in the abstract. *Durham v. State,* 112 Tex.Cr.R. 395, 16 S.W.2d 1092 (1929). There the defendant and another were "engaged upon the joint enterprise" of selling intoxicating liquor. On original submission this Court found no error in the failure to apply the law of principals to the facts because there was no evidence raising an issue under that theory. Furthermore, and for the same reason, the abstract charge on the law of principals was not found to be "calculated to injure the rights of the defendant," under former article 666, V.A.C. C.P. (1925), the immediate precursor to present Article 36.19, supra. On rehearing, in the course of upholding its original determination, the Court observed:

"When the evidence shows that the accused on trial was a principal actor in the commission of the offense, no charge on principals would be necessary, although the proof may also disclose that in doing the criminal act another took an equal part."

16 S.W.2d at 1095. A host of cases raising one or both of the related issues in *Durham* followed, and were dispatched accordingly. See e.g., *Lowe v. State,* 377 S.W.2d 193 (Tex.Cr.App.1964), and cases listed at 195; *Scott v. State,* 450 S.W.2d 868 (Tex. Cr.App.1970); *Hannon v. State,* 475 S.W. 2d 800 (Tex.Cr.App.1972); *Stein v. State,* 514 S.W.2d 927 (Tex.Cr.App.1974). In each of these cases the evidence demonstrated the guilt of the defendant as a primary

actor. Though in some the defendant clearly took an equal part with another, both being primary actors in commission of the offense, in none did an issue arise whether the defendant might have been guilty under the law of principals.

In a second line of cases the Court held that where the evidence supports conviction only upon a theory involving the law of principals, failure to apply that law to the facts upon request or objection will result in reversal. *Oliver v. State,* 160 Tex.Cr.R. 222, 268 S.W.2d 467 (1954); *Barnes v. State,* 145 Tex.Cr.R. 131, 166 S.W.2d 708 (1942); *Crisp v. State,* 125 Tex.Cr.R. 603, 69 S.W.2d 772 (1934). The demarcation between these two lines of cases was sufficiently fuzzy that the Court undertook to clarify it in *McCuin v. State,* 505 S.W.2d 827 (Tex.Cr.App.1974), setting out the following test:

> "Where the evidence introduced upon the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient in and of itself, to sustain the conviction, no submission of the law of principals is required. The Durham rule governs in this situation.
>
> "On the other hand, if the evidence introduced upon the trial of the cause shows, *or raises an issue,* that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependant, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case. Thus, the Oliver rule will govern this fact structure."

*Id.,* at 830. Though the underscored clause above might suggest that it would be error not to apply the law of principals upon request in any case in which the accused is susceptible under the proof to conviction under that theory, regardless of whether the evidence might also support conviction of the accused as a primary actor, in prac-

tice the Court continued to apply the *Oliver* rule to reverse only those cases in which the law of principals, now "parties," was the only avenue of conviction available under the evidence. E.g., *Apodaca v. State,* supra; *Rasmussen v. State,* 608 S.W.2d 205 (Tex.Cr.App.1980) (opinion on original submission); *Jaycon v. State,* supra. Cf. *Savant v. State,* 544 S.W.2d 408 (Tex.Cr. App.1976). Where the evidence has been found "sufficient to sustain the conviction" of the defendant as a primary actor, that the trial court gave abstract instructions on the law of parties has been deemed, at least by panels of this Court, to be harmless. *Todd v. State,* 601 S.W.2d 718 (Tex. Cr.App.1980); *Mauldin v. State,* 628 S.W. 2d 793 (Tex.Cr.App.1982). Not surprising, then, that in *Govan* the Court should hold it is also harmless error to fail to apply the law of parties to the facts where the evidence "clearly supports" conviction of the accused as a primary actor.

In footnote 2 of *Black v. State,* supra, the *Govan* test for harm was harmonized with our opinion in *Almanza.* Judge Teague argued in dissent that so long as evidence raises the issue of guilt of the accused under the law of parties, it should be reversible error not to apply that law to the facts, irrespective of whether the evidence might also "clearly support" his conviction as a primary actor:

> "In the face of a timely and specific objection, such as the one interposed in this case, a showing of 'some harm' has been demonstrated because there is a logical possibility, supported by evidence, that the jury convicted [defendant] upon a theory of vicarious culpability without being expressly informed of the facts it must find before doing so. The rule in *Govan* precludes a finding of harm in such context."

723 S.W.2d at 683. Speaking for the majority in rejecting this "logical possibility" conception of "some harm" under *Almanza,* Judge Campbell opined that, on the contrary, it would be illogical to presume that, confronted by evidence an accused was the primary actor in commission of an offense, a jury would choose nevertheless

to proceed upon a theory of parties simply because that theory also had some support in the evidence. Instead the Court advocated the kind of "examination of the entire record" called for in *Almanza,* supra, whereby:

> "... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

686 S.W.2d at 171. Judge Campbell acknowledged that "if the record indicated some basis for rejecting the evidence of the [defendant's] guilt as a [primary actor,] i.e., if the State argued that [defendant] was guilty as a party or if there was conflicting evidence of [defendant's] guilt as a [primary actor,]" then "some harm" could be predicated on the trial court's failure to apply the law of parties to the facts. To this extent, footnote 2 of *Black* suggests, the simple inquiry whether the evidence "clearly supports" guilt of the accused as a primary actor would prove an inadequate gauge of harmfulness, at least in the face of a timely and specific objection.

Such is the case here. It may be that a reasonable jury could find appellant's relatively fleeting presence in the Jaguar on the morning of February 24th, assuming they believe it was him, was sufficient to establish he himself "restrained" the complainant, here by· "holding" her. §§ 20.-04(a) and 20.01(2)(A), supra. However, it is clear the State considered the voice identifications of appellant to constitute direct, and therefore more compelling evidence of his guilt as a party to the conduct of Clifford and others, which direct evidence was reinforced by the circumstances indicating his presence in the Jaguar on the morning of the 24th. Just as clearly, that was a less rigorous theory upon which to prosecute appellant on this record, since it would avoid the otherwise necessary risk the jury (or an appellate court, for that matter) might decide his conduct by itself was insufficient *actus reus* to convict him as a primary actor in the offense.

■ Because the evidence raised an issue whether appellant was guilty under the law of parties as defined in § 7.02(a)(2), supra, we hold it was error for the trial judge to refuse appellant's request that the charge more explicitly apply the law of parties to the facts of this case.[4] Moreover, because that was the theory of prosecution best supported by the evidence and most fervently advanced before the jury in the State's final argument, we hold this error precipitated at least "some harm" to appellant under *Almanza v. State,* supra, irrespective of whether the evidence incidentally supported conviction of appellant as a primary actor as well. Cf. *Arline v. State,* 721 S.W.2d 348 (Tex.Cr.App.1986).

The judgment of the court of appeals is therefore reversed and the cause is remanded to the trial court for a new trial.

WHITE J., concurs in result.

ONION, P.J., and W.C. DAVIS and McCORMICK, JJ., dissent.

TEAGUE, Judge, concurring.

The majority opinion, although it expresses views not wholly in accord with my own, represents a significant step in the right direction, and I concur in its ultimate conclusion. However, in an effort clearly to identify those points upon which I differ with the majority, the following observations are, I think, pertinent to the issue and

---

4. Where evidence raises an issue whether the accused acted as a primary actor or as a party, the pattern jury charge found in McClung, Jury Charges for Texas Criminal Practice (rev.ed. 1987), at 12, would authorize in the paragraph applying the law to the facts that the accused be convicted if the jury should find he committed the offense "either acting alone or with ____ (or 'another') as a party to the offense as that term is hereinbefore defined." However, we observe that such a charge fails sufficiently to inform the jury which specific mode or modes of conduct enumerated in § 7.02(a)(2), supra, (*viz:* whether the accused "solicited, encouraged, directed, aided or attempted to aid," or some combination thereof, as raised by the evidence) may form an alternative basis for conviction. See Foreman and Jones, Submitting the Law of Parties in a Texas Criminal Prosecution, 33 Baylor L.Rev. 267, at 282 (1981). This was precisely the nature of appellant's objection in the instant case.

will, no doubt, arise again in similar contexts.

Nothing could be more obvious to me than that appellant in this cause was entitled to a jury instruction expressly applying the law of complicity to the facts of the case, and authorizing the jury to convict upon such theory only given adequate evidentiary support for all of its elements. Nevertheless, in recent past opinions, this Court has articulated limitations upon the right of an accused to jury instructions of this kind. These opinions, particularly *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr. App.1985), and *Govan v. State*, 682 S.W.2d 567 (Tex.Cr.App.1985), are disturbing, for they involve applications of the "harmless error rule" with which I do not agree. The instant cause, if strictly controlled by the language of *Govan*, would have to be affirmed. Instead, I am pleasantly surprised to see that it is reversed, since in doing so the Court has perceived and corrected at least one of *Govan*'s worst implications.

A jury charge on the law of complicity, or vicarious criminal liability, typically known by the misleading appellation "law of parties,"[1] is logically required whenever evidence at trial raises an issue that conduct alleged in the charging instrument was committed by a person other than the accused, but that the accused is criminally responsible for such conduct by operation of Penal Code, § 7.02. Only in cases where the charging instrument does not expressly allege any elements of complicity is there a serious potential problem with jury instructions of this kind.[2] In such cases, the most common complaint encountered by this Court is a failure by the trial judge to apply the law of complicity to the facts of the case after first abstractly defining it in the jury charge. Whenever he does this, the jury is left without adequate guidance concerning those circumstances under which it should convict and those under which it should acquit. Accordingly, the judges of this Court generally agree that refusal of the instruction over timely and specific objection is error. The difficulty is in determining when the error is prejudicial or harmful enough to call for a reversal of the conviction.

I take the Court's holding in the instant cause to be that, where (1) multiple distinct theories of guilt are submitted for jury consideration, and (2) each is supported by evidence constitutionally sufficient for conviction, and (3) the jury charge applies one legal theory, *but not both*, to the facts of the case, and (4) the omission is sufficiently objected to by the defendant, and (5) the theory upon which no application instruction was given is supported by stronger or more persuasive evidence than the theory upon which a complete application instruction was given, then the error of omission is harmful enough to call for reversal.

The fifth premise is evidently derived from a footnote in *Black v. State*, 723 S.W.2d 674, 675–676, n. 2 (Tex.Cr.App. 1986), which responded to my dissenting opinion in that case. While I agree that the addition of this premise improves the analysis somewhat, my own formulation of the rule would eliminate premise (2) altogether, making further refinement unnecessary. I would drop premise (2) because the submission of any theory not supported by constitutionally sufficient evidence for conviction amounts to a misrepresentation by the trial judge, which is likely to mislead the jury into thinking that there is more than a modicum of evidence in the record supporting the theory. Conversely, whenever there is sufficient evidence in the record to authorize submission of the issue, an affirmative finding upon it by the jury

---

1. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Penal Code, § 7.01(a). Thus, all criminally responsible persons are "parties", whether primarily or vicariously so. To reserve the epithet only for the latter evinces a subtle misunderstanding of modern Texas penal law.

2. It appears to me that this Court's rule that a party to an offense may be charged with the offense without the indictment alleging the facts which make the defendant criminally responsible for the conduct of another may be the cause why problems exist in this area of the law. See e.g., *Pitts v. State*, 569 S.W.2d 898 (Tex.Cr.App.1978), and its progeny.

should be unreviewable by an appellate court. Consequently, *if properly submitted, it cannot be assumed on appeal that the jury did not find it true.* Sufficiency of the evidence is a useful appellate tool only for determining whether an issue should be submitted for jury consideration in the first place, not to assess the harmfulness of an erroneous multiple-issue jury charge.

Once evidentiary sufficiency is eliminated as a criterion for determining prejudice in this context, premise (5) becomes unnecessary to correct the anomolous situation resulting when the unapplied theory is the stronger of the two. Moreover, it exceeds the scope of proper appellate review to judge the relative evidentiary strengths of multiple theories, *all* of which are supported by constitutionally sufficient evidence. Once we become involved in an enterprise this delicate, the jury trial as a meaningful factfinding device is damaged immeasurably, and the system devised to effectuate it loses its internal consistency.

## STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

State's motion for rehearing on petition for discretionary review denied.

## DISSENTING OPINION ON STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

ONION, Presiding Judge, dissenting.

On original submission the judgments of the Court of Appeals and the trial court were reversed and the causes remanded to the trial court. Three judges dissented without opinion.

On rehearing the majority overrules the State's motion for leave to file a motion for rehearing. I feel compelled to dissent again and state my reasons therefor.

Appellant was convicted under V.T.C.A., Penal Code, § 20.04(a)(1), of the offense of aggravated kidnapping. After the verdict the trial court assessed punishment at fifty (50) years' imprisonment.

On appeal in a single point of error appellant complained the trial court "erred in its charge to the jury in failing to apply the law of parties to the facts over the timely objection of the appellant." The Court of Appeals, in a published opinion, *Johnson v. State,* 702 S.W.2d 691 (Tex.App.–Houston [14th Dist.] 1985), affirmed the conviction rejecting the sole point of error. The Court of Appeals noted that the trial court properly instructed the jury in the abstract on the law of the parties and in applying the law to the facts authorized the jurors to convict if they found beyond a reasonable doubt that the appellant "either acting alone or with another or others as a party as that term has heretofore been defined" committed the offense charged. The court then observed that there was a reasonable inference that appellant was one of two male guards who actually restrained the complainant. Under our decision in *Govan v. State,* 682 S.W.2d 567 (Tex.Cr.App.1985), this would have been sufficient to sustain applicant's conviction as a principal actor despite any error in the charge applying the law of parties. Although the Court of Appeals did not directly cite *Govan,* it did hold that the error, *if any,* in the instant jury charge was harmless citing *Watson v. State,* 693 S.W.2d 938 (Tex.Cr.App.1985). The failure to cite *Govan* does not render the Court of Appeals' decision wrong nor render this Court incapable of considering that the appellant was guilty as a principal actor.

Appellant's petition for discretionary review stated his sole ground of review in the exact wording of his point of error quoted above.

The majority of this Court on original submission reversed the judgment of the Court of Appeals for reasons set forth in its opinion. I am compelled to dissent.

From an examination of the record I find that the summary of facts found in the State's appellate brief filed in the Court of Appeals is accurate. I quote therefrom:

"On February 23, 1984, Marjorie Lemieux, the complaining witness, was abducted from the driveway of her home by a masked assailant. Her hands and feet were bound, her face covered, and she was placed under a roll of carpet in the

backseat of her automobile. The masked assailant wisked the complainant from her home, in her automobile, and proceeded to drive approximately an hour before stopping and calling Mr. Lemieux, her husband, and making a ransom demand. A second kidnapper joined the complainant and the first kidnapper, and took charge of the complaining witness, while the first kidnapper left for some six hours. Eventually, the first kidnapper rejoined the complaining witness and throughout the rest of the night and next morning the complainant was guarded by two male kidnappers and she was intermittently driven and secreted around the city until her eventual release in return for two hundred thousand dollars.

"Throughout the ordeal, the complaining witness was terrified and felt her demise was imminent. No identification, by voice or sight was made by the complaining witness of any of her assailants.

"Mr. Henry Lemieux, the spouse of the complaining witness, received a call on February 23, 1984, at approximately 3:30 p.m., informing him that Mrs. Lemieux was being held for two hundred thousand dollars ransom. Immediately, Mr. Lemieux contacted the F.B.I. and local police, and tape recordings were made of all the ransom calls made by the kidnappers to the Lemieux residence. These tapes were admitted in evidence against the appellant. Over the course of the next twenty hours, Mr. Lemieux received frequent telephone calls from the kidnappers. In these telephone calls, Mr. Lemieux was given various instructions and demands concerning the delivery of the ransom money and the release of his wife. Mr. Lemieux followed a complicated wrangle of telephone instructions, rendezvouses, and drop points which eventually wound up in the exchange of cash for the release of his wife at a North Houston hotel.

"Upon recovery of Mrs. Lemieux's automobile at the hotel where she was released, it was searched and a notebook, notepad, mirror, and several other items belonging to the complaining witness were found to be missing. Mr. Lemieux

positively identified the appellant's voice as one of the kidnappers who gave instructions over the telephone.

"Gena Hammonds, the appellant's girlfriend, positively identified the appellant's voice, as one of the voices from taped records of the conversations between Mr. Lemieux and the kidnappers.

"Officer I.O. Franks of the Houston Police Department, was present at the arrest of Harry Arnold Clifford, shortly after the release of Mrs. Lemieux. Clifford was arrested a short distance from the hotel where Mrs. Lemieux was released, driving a van dropped by the F.B.I. containing the ransom money at the hotel. Pursuant to a search incident to his arrest, the ransom money was found in the van and numerous items were found in a large bag which ultimately linked the appellant to the kidnapping. Specifically, Officer Franks recovered a coke can, a notebook, a ski mask, a pillow case and a mirror from the complainant's automobile; the complainant's notebook cover and notebook paper were also recovered. These items found in Clifford's possession were submitted to the Houston Police Department Crime Lab by Officer Franks for latent print examination.

"Officer O.A. Malaer, a certified latent print examiner with the Houston Police Department, examined the items submitted by Sergeant Franks and determined that the appellant's fingerprints were on the complainant's notebook, notepad, and the ransom notes all recovered from the co-defendant, Harry Arnold Clifford. Officer Malaer also examined an automobile, owned by Harry Arnold Clifford, which was impounded by Sergeant Franks shortly after Mrs. Lemieux was released. This vehicle had been parked at the airport parking lot by Mr. Clifford shortly before the release of Mrs. Lemieux. The appellant's fingerprints were found on a bottle in the backseat of Mr. Clifford's vehicle.

"Finally, Mr. Wayne Poyner, a certified questioned documents examiner with the Houston Police Department, testified the appellant wrote the ransom and kid-

napping instructions found in Mr. Clifford's possession and placed writing on the complaining witness' notepaper."

The evidence was such as to authorize the court to submit both theories of the State to the jury, and upon which the prosecution was entitled to rely without surrendering one or the other, and without being faulted because it later stressed one theory more than the other in jury argument. Even the majority concedes in its opinion that a reasonable jury could have found appellant guilty as a principal actor under the evidence.

The trial court in its charge instructed the jury, inter alia, as follows:

"All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

"Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of February, 1984, in Harris County, Texas, the defendant, Samuel Richard Johnson, *either acting alone or with another or others as a party, as that term has heretofore been defined,* did then and there unlawfully intentionally or knowingly restrain MARJORIE LEMIEUX, by secreting and holding MARJORIE LEMIEUX in a place where she was not likely to be found, with intent to prevent the liberation of MARJORIE LEMIEUX and with intent to hold MARJORIE LEMIEUX for ransom or reward, then you will find the defendant guilty of aggravated kidnapping as charged in the indictment.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of aggravated kidnapping." (Emphasis supplied.)

As can be seen the court charged abstractly on the law of parties and then immediately thereafter applied the law to the facts using the phrase "either acting alone or with another or others as a party, *as that term has heretofore been defined.*" And, of course, the "term" had been defined in the preceding paragraphs.

To this portion of the charge the appellant addressed the following oral objection with the court's permission:

"MR. BAX: First, the Defense would object to the charging paragraph in the Court's Charge in that it does not apply the law to the facts. It states that the jury is to find that the defendant, either acting alone or as a party as that term is defined, did commit the offense. It fails to allege the specific acts that the State is relying on to make him a party. It does not say depending on solicitation, encouragement, direction, aid or attempt to aid one Mr. Clifford in the commission of this offense.

"We feel that the charge should and must apply what facts the State is relying upon on the part of Sam Johnson, if there were any, to create him a party in the eyes of the law; and we feel that the charge in its present condition allows the jury to convict on theories that the evidence does not raise.

"THE COURT: Do you have a prepared charge you wish to submit to the Court?

"MR. BAX: No, sir, we do not.

"THE COURT: That request will be denied."

The manner in which the court charged the jury has long held to constitute an adequate application of the law of parties to the facts even if there were a timely objection. See, e.g., *Steen v. State,* 131 Tex.Cr.R. 532, 100 S.W.2d 109 (1936); *Cain v. State,* 136 Tex.Cr.R. 275, 124 S.W.2d 991 (1938); *Edwards v. State,* 144 Tex.Cr.R. 485, 164 S.W.2d 706 (1942); *Dukes v. State,*

161 Tex.Cr.R. 423, 277 S.W.2d 710 (1955); *White v. State*, 385 S.W.2d 397 (Tex.Cr. App.1964); *Minor v. State*, 476 S.W.2d 694 (Tex.Cr.App.1972); *Rivas v. State*, 496 S.W.2d 600 (Tex.Cr.App.1973).

*Gilmore v. State*, 666 S.W.2d 136, 157 (Tex.App.–Amarillo 1983) (Discretionary Review Refused Jan. 25, 1984), held that the evidence supported the following charge:

"'... if you believe from the evidence beyond a reasonable doubt that on or about the 6th day of November, 1980 ... Vernon Ray Gilmore *either acting alone or with another as a party to the offense* ... did then and there knowingly cause the death of ... Richard Grier Luster ... you will find the defendant guilty of the offense of murder.... [emphasis added]' "

The *Gilmore* court then wrote:

"Since we have concluded that the evidence raised the issue of appellant's criminal responsibility with Samantha Davidson, it follows that the above stated charge properly applied the law of parties to the facts of the case...." (Emphasis added.)

See *Minor v. State*, supra; *Rivas v. State*, supra.

In McClung, *Jury Charges for Texas Criminal Practice* (Rev.Ed.1985), p. 10, it is written:

"(2) where the issue is raised or there is a question · or dispute as to whose activity caused the specific result, such as who fired the shot, or whose shot hit deceased or whose blow or kick hit the victim in the head and caused serious bodily injury then the charge should incorporate a phrase or clause to take care of such situation:

"(After giving the law of parties, as in the first paragraph of (1) next preceding, which starts with 'Each party to an offense,' follow with this as the second paragraph:"

" 'Now, if you find from the evidence beyond a reasonable doubt that on or about the ___ day of ___, 19___, in ___ County, Texas, the defendant, Y, *either acting alone or with (or "another") as a party to the offense), as that term is hereinbefore defined, did intentionally or knowingly (cause serious bodily to D by beating him with his fists and kicking him with his feet), then you will find the defendant guilty of aggravated assault.' "* (Emphasis added.)

See also McCormick and Blackwell, Texas Practice, Texas Criminal Forms and Trial Manual, § 84.01, pp. 301–302; Branch's 3rd Ed., Texas Anno. Penal Statutes, Vol. 1, § 7.02, p. 257, form 2. When a jury charge on parties is necessitated by the evidence, the charge may take various forms depending upon the evidence as the form books indicate. These submissions are not always given without difficulty. See generally Foreman and Jones, Submitting Law of Parties in a Texas Criminal Prosecution, 33 Baylor Law Review 267. And this is also true where an issue is raised by the evidence whether the defendant is criminally responsible for the commission of the offense by his own conduct, or by the conduct of another, or by both.

In *Foreman* and *Jones*, supra, it is written:

"It is not unusual for a charge to apply the law of parties to the facts by an instruction allowing the jury to convict on finding that defendant, either alone or acting as a party with another person, did the act charged [citing Morrison and Blackwell, New Penal Code Forms, C–7.01 at 100–01]. An instruction of that kind is permissible if the evidence raises both the theory that the defendant did the act charged and the theory that another person participated with defendant in doing that act."

The instant case is not one where the court charged only abstractly on the law of parties and thereby failed to apply the law to the facts.[1] The court applied the law to the facts in a time honored manner, al-

---

1. See *Minor v. State*, supra, at 696; see also *Harris v. State*, 522 S.W.2d 199 (Tex.Cr.App. 1975); *Perez v. State*, 537 S.W.2d 455 (Tex.Cr. App.1976); *Williams v. State*, 547 S.W.2d 18 (Tex.Cr.App.1977).

though that method may not suit the present majority.[2] It simply cannot be said that the trial court erred in failing to apply the law of parties to the facts of the case as was appellant's contention on appeal and is his contention in his petition for discretionary review.

Where the trial court's instructions to the jury encompass the substance of the matters which the defendant desires to have propounded to the jury, the failure to give the defendant's specific requested instruction does not entitle the defendant to a reversal. *Debolt v. State,* 604 S.W.2d 164, 168 (Tex.Cr.App.1980); *LeDuc v. State,* 593 S.W.2d 678, 685 (Tex.Cr.App. 1979); *Thomas v. State,* 578 S.W.2d 691, 698 (Tex.Cr.App.1979).

When read as a whole the charge, in my opinion, was sufficient to charge the jury on the law of parties and apply the law to the facts.

Certainly it may have been better practice to have redrafted the charge somewhat in response to appellant's objection, no error for failure to do so is reflected. Under the evidence appellant was not entitled to have the charge applying the law of parties to the facts limited to "a Mr. Clifford" as his objection states. I would find no error in the charge and would affirm the judgment of the Court of Appeals.

Further, if there was error, it was harmless error since the evidence was also sufficient to support the conviction of appellant as a principal actor and any rational jury could have so found. See *Govan,* supra.

Most disturbing to me is the majority conclusion that while a rational jury under the evidence could have found the appellant guilty as a principal actor, the fact that the State, which relies upon two theories, seemed to more fervently advance the theory of parties, at least in one quoted excerpt from the jury argument, the error in the charge, perceived by the majority, "precipitated at least 'some harm' to appellant under *Almanza v. State,* supra, irrespec-

tive of whether the evidence incidentally supported the conviction of appellant as a primary actor as well...."

Nonsense, utter nonsense. I dissent.

DAVIS and McCORMICK, J., join this opinion.

**2.** It was only in *Govan* for the first time that the Court, without discussion of the time honored practice, or citation of authority, indicated in passing that the use of the term "acting alone or

as party as that term is herein defined" did not apply the law to the facts. *Id.* at p. 568. This is another reason this writer has considered *Govan* a most unusual case in many respects.