NUMBER 13-99-705-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________ 


JESSE CASSO , Appellant, 



v.

 

THE STATE OF TEXAS , Appellee. 

___________________________________________________________________ 



On appeal from the 105th District Court

of Nueces County, Texas.

____________________________________________________________________ 



O P I N I O N

Before Justices Hinojosa, Chavez, and Kennedy(1)

Opinion by Justice Kennedy

 

 Appellant was charged in a six count indictment involving three incidents. Counts one, two and five charge engaging in
organized criminal activity.(2) Counts three and four charge appellant with murder.(3) Count six charges appellant with
aggravated assault(4) and habitual felony offender. A jury found appellant guilty of the offenses charged in all six counts.
In addition, the jury found "true" to the allegations of prior felony convictions in count six. The judge found that a deadly
weapon was used in each of the six counts. The court assessed punishment at confinement for life for each count. Each of
the first five counts in the indictment contained multiple paragraphs. The jury's verdict was worded so as to find appellant
guilty only of engaging in organized criminal activity in counts one, two and five, to find him guilty only of murder in
counts three and four, and to find him guilty of aggravated assault in count six. When a general verdict is returned and the
evidence is sufficient to support a finding of guilt under any of the paragraph allegations submitted, the verdict will be
upheld. McDuff v. State, 937 S.W.2d 607, 614 (Tex. Crim. App. 1997). 

 Appellant's brief brings eight points of error. The first six allege insufficient evidence to sustain the convictions, each of
which relates to one of the counts in the indictment. At no point in his brief does appellant specify whether he is claiming
legal insufficiency or factual insufficiency. To determine whether the evidence is legally sufficient to support the verdict,
the appellate court views the evidence in the light most favorable to the verdict and asks whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318,
319;Weightman v. State, 975 S.W.2d 621, 624 (Tex. Crim. App. 1998). In a factual sufficiency review, the appellate court
examines all of the evidence impartially and sets aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997);Clewis v.
State,922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 

 With respect to the organized criminal activity counts (one, two, and five), the state offered evidence tending to prove that
appellant was a member of a street gang called Raza Unida. The Penal Code, Section 71.02(a)(1), defines engaging in
organized criminal activity (in pertinent part) as follows: 

 A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a
combination or as a member of a criminal street gang, he commits or conspires to commit one or more of the following: (1)
murder . . . aggravated assault . . . . . 



 We categorize appellant's first six points of error as follows: 

 1. Three points of error contending that the state did not adduce sufficient evidence to sustain a conviction for engaging in
organized criminal activity regarding counts one, two, and five (coincidentally points of error one, two, and five also)
because: 



 (a) The state failed to show a continuing course of criminal activities, and/or; 



 (b) The state failed to show that appellant acted in combination with two or more other people. 



In addition, appellant argues that the testimony of the co-conspirators is not corroborated. In this connection, we refer
toMcDuff v. State, 939 S.W.2d 607 (Tex. Crim. App. 1997) which holds: 

 The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his
guilt beyond a reasonable doubt; but rather, the non-accomplice evidence merely has to tend to connect appellant to the
offense.



McDuff at 613. 



 We address the organized criminal activity allegations first. Count one of the indictment refers to the murder of an
individual named Luis Luna (the Luna murder). Count two involves the murder of one Armando Munoz (the Munoz
murder). Count five refers to the shooting of Isaac Soliz (the Soliz assault). 

 In respect to the question of membership in a street gang, appellant's accomplices in the Luna murder, Rudy Contreras and
Jeremy Mungia testified that a street gang named Raza Unida does exist and has an identifiable sign, that appellant was the
leader of Raza Unida, that there is a chain of command, and that their activities include unlawful acts.(5)



THE LUIS LUNA MURDER

 Contreras told of being selected by appellant, along with Jeremy Mungia and Jason Luna, to kill Luis Luna (no relation to
Jason). He testified in detail to their picking up Luis Luna, going to Jeremy's house to pick up another car, going to
Jeremy's brother's house to pick up a gun (found at the murder scene by investigating officers, identified in court by
Contreras, and admitted into evidence). He testified that Jeremy had gloves for everyone, including Luis Luna, which they
all put on (which the state argues is corroborated by the investigating officers who found Luna's body with gloves on). They
then proceeded to the murder scene where Jason Luna got out of the car and started shooting at Luis Luna while walking
toward him (which the state argues is corroborated by the investigating officers who found the spent shell casings in a row
covering some distance). The three of them set fire to the car in which the murder took place (a burned car was found near
Luna's body by the investigating officers). Contreras then told of going to the house of another gang member who disposed
of the gloves and then made a phone call, presumably to appellant, to report that the job had been done. 

 The only evidence in the record of appellant's participating in the Luna murder is the testimony of his accomplices. In
order to determine whether the accomplice witnesses' testimony is corroborated, we eliminate all accomplice evidence from
the record and determine whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the
offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). When this is done in the case before us there is no
evidence to connect appellant to the Luna murder, thus the evidence is legally insufficient. Evidence which only
corroborates the testimony of the accomplice, but does not tend to connect the defendant to the offense, is insufficient
corroboration upon which to base a conviction. Id. at 563-64. 

 We are aware of the holding in Bingham v. State, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995) that out-of-court
statements of an accomplice are not "testimony" and thus do not require corroborating evidence. The court said, "By this
reckoning, we but effectuate the legislative intent when we read Article 38.14 to embrace only the in-court 'testimony' of an
accomplice." Id. at 211. The state's brief argues that two letters written from prison by Jason Luna, one to his girlfriend
and one to his grandmother, tend to prove appellant's gang membership and need not be corroborated by virtue of Bingham.
In the letter to his girlfriend, Jason requests that she send the letter, "this paper with the crazy writing to Jesse Casso." The
"crazy writing" is uncipherable, however, the state argues that it is some sort of code and proves that Jason and appellant
are members of Raza Unida. Other than the "crazy writing" the exhibit is no more than a love letter. 

 The letter to Jason's grandmother (Nana) relates that he is a member of a prison gang, that he killed someone and that the
"vato" who assisted him in the killing snitched on him. The letter makes no reference to appellant although he signs the
letter with his gang name, "Chino Boy" and inserts the words "Raza Unida" at the bottom of the last page. 

 We hold that the reference to appellant in Jason's letter to his girlfriend does not corroborate his participation in the murder
of Luis Luna. We hold the evidence to be legally insufficient to prove appellant's participation in the murder of Luis Luna,
therefore, we sustain appellant's first point of error. 

THE ARMANDO MUNOZ MURDER

 Point two of appellant's brief again charges that there was insufficient evidence to prove that appellant engaged in
organized criminal activity as alleged in count two of the indictment. First, reference is here made to the testimony earlier
recited concerning the existence of Raza Unida as a street gang and what its activities are. The accomplices in the Luna
murder were not accomplices in the Munoz murder. Reference is also made to that same testimony concerning appellant's
status and rank in the organization. As stated, insofar as the murder of Armando Munoz is concerned, Rudy Contreras and
Jeremy Mungia were not accomplices and their testimony about the gang's activities and appellant's participation can be
considered direct evidence which needs no corroboration. The court of criminal appeals in Medina v. State, 7 S.W.3d 633,
641 (Tex. Crim. App. 1999) set out what an accomplice is, as follows: 

 A person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for
the same offense as the defendant or for a lesser-included offense (citation omitted). Mere presence during the commission
of the crime does not make one an accomplice, nor is one an accomplice for "knowing about a crime and failing to disclose
it, or even concealing it." 



Contreras, who was involved in the Luna murder, testified that he was present at three meetings at which the proposed
murder of Munoz was discussed. He further testified as follows: appellant was present at one meeting of Raza Unida
during which he (appellant) participated in a discussion about previous attempts to kill Munoz which had failed. Appellant
asked for a volunteer to kill Munoz (put him in a box) and a member named Leandro Estrada volunteered. Appellant then
selected one Tomas Torres to assist Estrada in the murder. 

 Munoz was killed and, after his death, Contreras and Estrada had a conversation in which Estrada told Contreras about
killing Munoz with help from Torres. Estrada told Contreras where he and Torres had killed Munoz and what weapons
were used. The out-of-court statements to Contreras, testified to in court, need no corroboration. See Bingham, supra.

 Another gang member whose name is Isaac Soliz(6) testified that Tomas Torres told him that he and another gang member
had "gunned down" Munoz "with an SKS" in front of his house ("unloaded full clip on him"). Soliz stated that Torres told
him the murder of Munoz was done on the order of appellant. Soliz was not an accomplice of the Munoz murder and, in
fact, didn't even know of the murder until after it occurred. 

 There was testimony independent of the persons connected with the Munoz murder that Raza Unida is a street gang, what
its activities are, and that appellant is a member. 

 This evidence is sufficient to prove that appellant engaged in organized criminal activity and participated in the murder of
Armando Munoz. We overrule point of error number two. 

THE ISAAC SOLIZ ASSAULT

 Point of error five concerns the attempt of appellant and the other members of Raza Unida to murder Isaac Soliz which
Soliz survived. Fernando Espinoza was a member of Raza Unida but dropped out. Espinoza, whose non-accomplice
testimony need not be corroborated,Medina, supra, testified that he was at a meeting of Raza Unida and heard appellant
give the order for Soliz to be shot. Espinoza was out of town when Soliz was shot and only heard of the shooting from his
mother who read about it in the newspaper. 

 Isaac Soliz testified to getting into a pickup truck with several members of Raza Unida. One of the gang members had
asked Soliz to get into the truck to go talk to appellant about money Soliz owed to the gang. The truck stopped at several
locations, one of which was appellant's house. At appellant's house one of the gang members went to the porch and
received a paper bag from either appellant or his companion on the porch which he took back to the truck. Soliz had been
in the cab of the truck up to this point, however, because he "felt something was wrong" he got into the bed of the truck and
the truck left appellant's house. The truck began to go very fast and finally Soliz saw that one of the gang members in the
cab had a gun pointed at him through the rear window. The member pointing the gun fired at Soliz and struck him in the
neck. The member fired again but missed and Soliz jumped from the truck while it was going very fast. Soliz landed in
the roadway unconscious and was revived by a police officer who took him to a hospital. Soliz testified to all of this and
stated further that the bullet which struck him is still in him and cannot be removed. 

 Appellant argues, with respect to point five, that appellant cannot be guilty because the phrase "collaborate in carrying on
criminal activities" cannot be understood to include an agreement to jointly commit a single crime. He cites Nguyen v.
State, 1 S.W.3d 694 (Tex. Crim. App. 1999) to support his argument. In the case before us, unlikeNguyen, the cumulative
evidence shows a pattern of killing members of a gang as punishment for perceived offenses against the gang. We overrule
point of error number five. 

 Point of error number three alleges that the allegation in count three of the indictment wherein appellant is charged in two
paragraphs with the murder of Luis Luna, was not borne out by the evidence because appellant's participation in the murder
was not corroborated. The state, in its brief, replies in the same manner as in its reply to point of error one, that appellant is
guilty under the law of parties. The flaw in the state's argument is that all of the evidence of appellant's arranging the
murder of Luis Luna comes from the mouths of his accomplices in the murder and, in spite of a valiant attempt to show
corroboration of this testimony, there is no such testimony in the record. We need not repeat what we said in respect to
point of error one. We sustain point of error three for the same reason we sustain point of error one. 

 Point of error four raises the same argument on both sides of point of error two (the Armando Munoz murder). The
Munoz murder differs from the Luna murder, as previously noted, in that in the Munoz murder there are two witnesses to
appellant's participation in the murder and, because neither was an accomplice, their testimony need not be corroborated. 

 The only question then is whether appellant is guilty of the murder of Armando Munoz under the law of parties. It is
undisputed that appellant was not present when Munoz was shot. 

 Section 7.02(a)(2) states: 

 (a) A person is criminally responsible for an offense committed by the conduct of another if: 



 (2) Acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense; 



Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1994). 

 We have previously recited the testimony of Rudy Contreras about appellant's asking for a volunteer to murder Munoz and
then appointing Tomas Torres to assist Leandro Estrada in the murder. This evidence is sufficient to convict appellant as a
party to the murder. 

 Appellant's reliance on Pesina v. State, 949 S.W.2d 374 (Tex. App.-San Antonio 1997, no pet.) is misplaced. The
evidence in Pesinashowed that the defendant assisted the participants after the murder was completed. The court in
Pesinasaid, "One's act committed after the offense is completed cannot make him a party to the offense." Id. at 383. In the
case before us, the evidence is sufficient to prove that appellant was in on the Munoz murder from the beginning - even that
he initiated the murder. We overrule point of error four. 

 Point of error six alleges the evidence to be insufficient to sustain the conviction in count six of the indictment for
aggravated assault on Isaac Soliz. Appellant, in his brief, recites that the testimony of Rudy Contreras and Jeremy Mungia
who testified against appellant were accomplices. For reasons cited earlier, these two men who testified against appellant
in the Soliz assault were not accomplices. In addition, Fernando Espinoza, who was not an accomplice, testified that he
heard appellant give the order to put Soliz "in a box." The remainder of the testimony about the incident came from the
victim, Isaac Soliz. Appellant recites the law of parties which includes: 

 (a) A person is criminally responsible for an offense committed by the conduct of another if: 



 (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to
engage in conduct prohibited by the definition of the offense; 



 (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aid, or attempts
to aid the other person to commit the offense; or 



 (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he
fails to make a reasonable effort to prevent commission of the offense. 

 

 (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the
conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the
offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy. 



Tex. Penal Code Ann. art. § 7.02 (Vernon 1994). What the evidence shows that 



appellant did is covered by the language of (a)(2) cited above. 



 Appellant also argues under this point that the application portion of the charge fails to show what appellant actually did,
citing Johnson v. State, 739 S.W.2d 299 (Tex. Crim. App. 1987). Johnson differs from this case. In Johnson the defendant
was charged both as a primary actor and as a party. The court held that he was entitled to an instruction on parties,
especially when the evidence and the prosecutor's argument to the jury best supported this theory. We overrule point of
error six. 

 Point of error seven complains of the trial court's denial of his request that he charge the jury that all members of Raza
Unida who testified were accomplices as a matter of law. Alternatively, he argues that the trial judge should have charged
on a question of fact for the jury to decide whether each member of Raza Unida was an accomplice. 

 The court's charge to the jury stated that Rudy Contreras and Jeremy Mungia were accomplices as a matter of law in counts
one and three and submitted as a question of fact whether Rudy Contreras was an accomplice with regards to counts two,
four, five, and six. We have already held that Rudy Contreras and Jeremy Mungia were accomplices in connection with
counts one and three. We have also held that Isaac Soliz and Fernando Espinoza were not accomplices in connection with
the Munoz murder and the Soliz assault and we have stated why this is so. The trial court correctly charged the jury
concerning accomplice testimony and we overrule point of error seven. 

 Appellant's eighth and final point of error alleges ineffective assistance of counsel for failing to object to the court's
application paragraph on the law of parties. The allegation is that the trial court should have been more specific in saying
what the jury must find that appellant did (in counts three, four, and six) in order to find him guilty, and failure to object
was ineffective assistance. The standard for judging ineffective assistance of counsel was first set out in Strickland v.
Washington, 466 U.S. 668 (1984). In Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) it was held that
Texas constitutional and statutory provisions do not create a standard in ineffective assistance cases more protective of a
defendant's rights than the standard put forth by Strickland. We, therefore, agreed to follow in full the Strickland standards.
Stated briefly, the test is, (1) was counsel's performance deficient and, (2) but for counsel's deficient performance, would a
different result have been reached? 

 Having examined the charge, we find that the court phrased the application paragraph for counts three, four and six in the
language of the applicable statutes. Defense counsel was not ineffective in failing to object to these portions of the charge.
We overrule point of error eight. 

 We AFFIRM the judgment of the trial court as to points of error two, four, five, six, seven, and eight. 

 We REVERSE the judgment as to points of error one and three. We REVERSE the conviction and order the prosecution
dismissed as to both paragraphs in count one of the indictment. We REVERSE the conviction and order the prosecution
dismissed as to both paragraphs in count three of the indictment. We AFFIRM the judgment of the trial court as to all other
matters. 

NOAH KENNEDY 

Retired Justice 





Do not publish . 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this the 26th day of October, 2000. 



 

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Tex. Penal Code Ann. § 71.02(a)(1) (Vernon Supp. 2000).

3. Tex. Penal Code Ann. § 19.02 (Vernon 1994).

4. Tex. Penal Code Ann. § 22.02 (Vernon 1994).

5. Contreras' description of the activities of Raza Unida was rather succinct, i.e.: 



 Q. And what kind of activities does Raza Unida participate in? 



 A. Drug dealing, beating up people, murder. 

6. A former member of the gang and the victim in count five of the indictment.