Edward James BREWER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–02125–CR.

Court of Appeals of Texas, Dallas.

March 25, 1993.

Discretionary Review Refused June 9, 1993.

Anne Adair Dunlap, Dallas, for appellant.

Lori L. Ordiway, Dallas, for appellee.

Before LAGARDE, BURNETT and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

The sole issue before us in this appeal is whether the evidence is sufficient to support a rational jury finding that Edward James Brewer was guilty as a party to an aggravated robbery committed by another. Because we conclude that the evidence is sufficient, we affirm.

When analyzing the sufficiency of the evidence, an appellate court must first determine the legal theory of criminal responsibility under which the application paragraph of the charge properly authorizes the jury to convict. *See Chatman v. State*, 846 S.W.2d 329, 331 n. 1 (Tex.Crim. App.1993). Only then may an appellate court rule upon the sufficiency of the evidence as measured by the charge. *See Chatman*, 846 S.W.2d at 331 n. 1.

**Legal Theory of Criminal Responsibility**

Brewer argues that the evidence is insufficient to support his conviction because the application paragraph of the charge did not properly apply the law of parties to the facts of the case; thus, the jury was not authorized to convict him as a party to aggravated robbery. We disagree.

We first note the following significant facts: (1) there was no objection to the court's charge; (2) there was no specially requested charge; and (3) a proper abstract instruction on the law of parties was given. With those facts in mind, we must determine whether the words "acting with another as a party to the offense, as that term is herein defined" contained within the application paragraph of the charge authorized the jury to find Brewer guilty as a party based on the conduct of another.

Brewer relies on *Johnson v. State*, 739 S.W.2d 299, 305 (Tex.Crim.App.1987), *Apodaca v. State*, 589 S.W.2d 696, 699 (Tex. Crim.App. [Panel Op.] 1979), and *Chatman v. State*, 830 S.W.2d 637, 641 (Tex.App.— Beaumont 1992), *rev'd*, 846 S.W.2d 329 (Tex.Crim.App.1993).

*Johnson* is distinguishable. There the appellant specifically requested that the charge more explicitly apply the law of parties to the facts of the case. *Johnson*, 739 S.W.2d at 305 n. 4. Here there was no objection or specially requested charge.

Since the time of submission, the court of criminal appeals has reversed *Chatman v. State*, the opinion upon which Brewer primarily relies. *See Chatman v. State*, 846 S.W.2d 329, 332 (Tex.Crim.App.1993). *Chatman* involved a murder trial in which

the judge gave an abstract instruction on the law of parties essentially the same as the one given at Brewer's trial. *See id.* at 330. The application paragraph authorized the jury to find Chatman guilty of murder if it believed beyond a reasonable doubt that Chatman, "either acting alone or as a party, as that term has been defined," intentionally or knowingly caused the death of an individual. *See id.* at 330–31. The jury found Chatman guilty of murder. *See id.* at 330.

Relying on *Apodaca v. State,* 589 S.W.2d 696 (Tex.Crim.App.1979), the Beaumont Court of Appeals held that the application paragraph was inadequate as an application of the law of parties and, therefore, only authorized the jury to convict Chatman as a principal. *See Chatman,* 846 S.W.2d at 331. Because the court found no evidence that Chatman was guilty of murder by his conduct alone, it reversed Chatman's conviction and remanded for entry of an acquittal order. *See id.* at 331.

In reversing the Beaumont court's decision, the court of criminal appeals held that the language "acting alone or as a party, as that term has been defined," in the application paragraph, "generally applied" the law of parties to the facts. *See id.* at 332. It concluded that this general application was sufficient to refer the jury to the abstract instruction on the law of parties so that the jury could properly apply the law to the facts. *See id.* at 332. The court also distinguished *Apodaca,* pointing out that, in effect, there was no application of the law of parties to the facts in the application paragraph because it asked the jury to find Apodaca guilty if he acted as a principal. *See id.* at 332. The court further noted that if a defendant desires a more explicit application of a particular method of acting as a party, it is his burden to object to the charge or request a more detailed charge. *See id.* at 332 (citing *Johnson v. State,* 739 S.W.2d 299, 307 (Tex. Crim.App.1987)).

The charge given here contained an abstract instruction on the law of parties and an application paragraph that incorporated by reference that abstract instruction.

Furthermore, Brewer was not entitled to a more specific application of the law of parties because he failed to object to the jury charge or file a specially requested charge, even though the judge specifically asked Brewer's defense counsel if he wished to do so. *See id.* at 332. Therefore, this charge is sufficient under *Chatman* to authorize Brewer's conviction as a party. *See id.*

### SUFFICIENCY OF THE EVIDENCE

Having determined that the charge authorized the jury to convict Brewer as a party to aggravated robbery, we must decide whether the evidence presented at trial is sufficient to prove the allegations in the indictment, as measured by the charge, based on the State's legal theory of culpability, *i.e.* that Brewer was guilty based on the conduct of another. *See Boozer v. State,* 717 S.W.2d 608, 610 (Tex.Crim.App. 1984). Evidence is sufficient to support a conviction if this court determines, after evaluating the evidence in the light most favorable to the verdict, that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318– 19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

The essential elements of the offense of aggravated robbery as charged in this case and incorporated into the application paragraph of the charge are that: (1) Brewer (2) while in the course of committing theft, (3) and with intent to obtain or maintain control of property, to-wit: money, (4) intentionally or knowingly threatened or placed Robert Hall in fear of imminent bodily injury or death, and (5) used or exhibited a firearm. *See* TEX.PENAL CODE ANN. § 29.02(a)(2) & § 29.03(a) (Vernon 1989 and Vernon Supp.1993).

Lela Mae Davis testified that at about 5:30 a.m. on May 28, 1991, she parked her car in a parking lot across the street from the federal building where she works in the coffee shop. She saw a young man walk across the parking lot toward her and get

into a burgundy car. Before she entered the federal building, the burgundy car pulled up in front of a van parked by a paper rack on Young Street. The man she had earlier seen get in the burgundy car got out and shot a man standing by the van. Davis identified Brewer as the driver of the car.

Robert Hall, the complainant, testified that he delivers papers in downtown Dallas for the Dallas Morning News. On the morning of May 28, 1991, he was unloading newspapers at the intersection of Young and Lamar Streets when a brown or maroon car pulled up in front of his van at an angle so that he could not have driven his van forward without hitting the car. A man carrying a gun in his hand got out of the car and said, "Give me your money." When Hall replied that he didn't have any money, the man shot him in the chest from a distance of five feet. Hall returned fire. The man ran across the street and through a park. Despite his wound, Hall climbed into his van and chased the gunman. Hall saw the gunman get back into the same car that had dropped him off before the shooting; the car backed up for a short distance and ran into a pole or a curb; two men jumped out of the car and ran. After the police began to chase the two men, an ambulance arrived to treat Hall's wounds.

Phillip Washington, a Dallas County deputy constable, testified that he was driving to work at about 6 a.m. on May 28, 1991 when he heard gunfire at the intersection of Griffin and Young Streets in downtown Dallas. Hall pulled up in a van next to Washington's car and asked Washington to follow him. Washington complied and was led to a maroon car left parked in the street. After Hall told Washington that he had been shot, Washington saw a man running; he chased him. After the runner was apprehended, Washington saw Brewer seated on a curb across the street from the federal building. Brewer told Washington that he was the driver of the maroon car.

Brewer took the stand and testified that Willie Dell Robinson, a friend of his daughter, knocked on his door at some time prior to 5:30 a.m. on May 28, 1991 and asked

Brewer to drive him to his girlfriend's house on Gaston Avenue. Brewer's fiancee let him borrow her car. Once they were in the car, Robinson persuaded Brewer to take him downtown to meet a friend on Griffin Street. Brewer let Robinson out of the car on Lamar Street near the federal building, told him to hurry, and then drove around for a few minutes. Brewer next saw Robinson at the intersection of Lamar and Young streets, running toward him. When Robinson got into the car, a man in a van began shooting at them. Brewer saw Robinson pull a gun from his pocket. Brewer put the car in reverse and accelerated in an attempt to escape the shots from the van. After the car collided with a telephone pole and a curb, Brewer got out of the car and ran. He saw a police officer and told him that there had been a shooting. The police officer drove away and Brewer wandered back to where he had abandoned his fiancee's car. He was later arrested at that location. Brewer denied that he participated in or had knowledge of the robbery and shooting.

Irma Wesley, Brewer's girlfriend, testified that she was in bed with Brewer at the Red Roof Inn on the morning of May 28, 1991. Sometime before 6 a.m., Robinson knocked on the door and asked Brewer to give him a ride to his girlfriend's house. Brewer asked her if he could borrow her car. She said he could if he would be back by 7 a.m. so that she could drive to work. Wesley stated that she owned a maroon 1984 Caprice Classic.

As their final witness, the defense called Gregory Lee Johnson, a Dallas County deputy constable. He testified that he was driving to work at about 6 a.m. on May 28, 1991 when Brewer approached him at the intersection of Young and Griffin streets and told him that there had been a shooting near the federal building. Johnson notified his dispatcher and drove in the direction that Brewer had pointed him. At some point he saw Washington chasing Robinson and joined in the pursuit. After they apprehended Robinson, Johnson saw Brewer sitting on a curb next to a van.

The State called two witnesses on rebuttal: Thomas Arnold and K.C. Edmonds. Arnold, a Dallas police officer, testified that he was on patrol the morning of May 28, 1991. In response to a dispatcher alert about a shooting, he drove to Lamar Street. Upon arriving there, he saw Washington and Hall leaning up against the side of a van. Washington gave him a description of the gunmen. Arnold searched the area and eventually spotted Brewer and Robinson running. He apprehended Robinson and placed him under arrest. At some point after the arrest, Brewer approached Arnold and claimed ownership of the burgundy car. Brewer also told him that Robinson had entered his car from the passenger side, pointed a gun at him, and told him to drive away.

K.C. Edmonds, also a Dallas police officer, testified that when he interviewed Brewer after his arrest, Brewer initially told him that an unknown, armed man opened his car door and got in. After contacting and talking to the owner of the car, Irma Wesley, Edmonds told Brewer that he did not believe him. Brewer then made a written statement about the events of May 28, 1991 which essentially mirrored his testimony at trial.

Brewer does not dispute that Willie Dell Robinson committed aggravated robbery. Instead, he argues that the evidence is insufficient to show that he acted as a party to that aggravated robbery. Although he acknowledges that he drove the car that dropped off Robinson before the shooting and picked him up afterward, Brewer points out that (1) he was not armed, (2) he was not present during the aggravated robbery, and (3) there is no evidence suggesting that he knew about Robinson's intent to rob Hall.

■ A person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). Mere presence at the scene of a crime is not sufficient to establish guilt as a party, but presence is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a party to the crime. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App.1987). Furthermore, evidence that a defendant drove the getaway car after a robbery has been held sufficient to convict the driver as a party to the offense. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App.1985); *Webber v. State*, 757 S.W.2d 51, 56 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

■ The evidence presented at trial established that Brewer drove the car which dropped off Robinson immediately prior to the time that Robinson shot Hall. Brewer stopped his car in front of Hall's van at an angle, thereby preventing Hall from driving his van forward without hitting the car. Brewer also picked up Robinson shortly after the shooting. After his arrest, Brewer initially told Officers Arnold and Edmonds that an unknown gunman had jumped into his car. When Edmonds spoke with Brewer's fiancee and then told Brewer that he did not believe his story, Brewer admitted that he knew Robinson but still claimed ignorance of his intent to rob Hall.

Although Brewer testified at trial that he was unaware of Robinson's intent to rob Hall, the jury as trier of fact was the sole judge of the witnesses' credibility. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim. App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.— Dallas 1991, pet. ref'd). Accordingly, the jury was free to accept or reject the testimony of any witness. *Sharp*, 707 S.W.2d at 614; *Dumas*, 812 S.W.2d at 615. Furthermore, the jury had good reason to discredit Brewer's trial testimony in light of his initial statements that an unknown gunman had jumped into his car and forced him to drive at gunpoint. In light of Brewer's inconsistent statements, the angle at which Brewer pulled his car in front of Hall's van, and Brewer's presence as Robinson's driver immediately before and after the robbery, we conclude that the evidence is sufficient to support a rational jury find-

ing that Brewer was guilty of aggravated robbery. We overrule Brewer's sole point of error.

We affirm the trial court's judgment.