Opinion filed July 26, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed July 26, 2007

 

 

 

 

 

 

                                                                                                                                                            

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00316-CR

                                                    __________

 

                                           JAMES POPE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CR29577

 



 

                                                                   O
P I N I O N

The jury convicted James Pope of the offense of
aggravated robbery.  The jury assessed
appellant=s
punishment at fifteen years confinement. 
The issue on appeal is whether the evidence was legally sufficient to
support appellant=s
aggravated robbery conviction under the law of parties. Because the evidence
was legally sufficient to support the conviction, we affirm the judgment of the
trial court.

                                                                    Background

Appellant was indicted for aggravated robbery by
using or exhibiting a deadly weapon during the course of committing a
robbery.  Specifically, the indictment
alleged that appellant, in the course of committing theft and with the intent
to obtain and maintain control of property of Darcy Elliot, intentionally and
knowingly threatened and placed Elliot in fear of imminent bodily injury and
death by using and exhibiting a deadly weapon, to-wit: a firearm.

After the conclusion of the evidence, the trial
court instructed the jury on the law of parties.  The trial court gave the following
instruction:

Now, bearing in mind the foregoing instructions,
if you believe beyond a reasonable doubt that HAROLD SANDERS, on or about the
14TH DAY OF APRIL 2004 in the County of Midland and State of Texas, as alleged
in the indictment, did then and there while in the course of committing theft
and with the intent to obtain or maintain control of property of DARCY ELLIOT,
did then and there by using or exhibiting a deadly weapon, to-wit: a firearm,
intentionally or knowingly threaten or place DARCY ELLIOT in fear of imminent
bodily injury or death, AND YOU FURTHER BELIEVE from the evidence beyond a
reasonable doubt that [appellant], acting with the intent to promote or assist
the commission of the said offense of AGGRAVATED ROBBERY by HAROLD SANDERS, did
then and there solicit, encourage, direct, aid, or attempt to aid the said
HAROLD SANDERS to commit the said offense of AGGRAVATED ROBBERY, you will find
[appellant]  guilty of the offense of
AGGRAVATED ROBBERY as charged in the indictment and so say by your verdict, but
if you do not so believe or if you have a reasonable doubt thereof, you will
acquit [appellant] of the offense of AGGRAVATED ROBBERY and say by your verdict
Anot guilty@
of AGGRAVATED ROBBERY.     

 

The trial court=s
charge also included an instruction on the law of parties on the lesser
included offense of robbery.  The jury
found appellant guilty of the offense of aggravated robbery.

                                                             Discussion
of the Law








A person commits the offense of robbery if, in the
course of committing theft and with intent to obtain or maintain control of
property of another, he intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death. 
Tex. Penal Code Ann. ' 29.02(a)(2) (Vernon 2003).  A person commits the offense of aggravated
robbery if, in the course of committing robbery, he uses or exhibits a deadly
weapon.  Tex. Penal Code Ann. '
29.03(a)(2) (Vernon 2003).  A deadly
weapon is a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury or anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.  Tex. Penal Code Ann. '
1.07(a)(17)(A), (B) (Vernon
Supp. 2006).

Under the law of parties, a person is criminally
responsible as a party to an offense if the offense is committed by the conduct
of another for which he is criminally responsible.  Tex.
Penal Code Ann. '
7.01(a) (Vernon 2003).  A person is
criminally responsible for an offense committed by the conduct of another if,
acting with the intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.  Tex. Penal Code Ann. ' 7.02(a)(2) (Vernon 2003).  In determining whether a defendant
participated in an offense as a party, we may examine the events occurring
before, during, and after the commission of the offense; and we may rely on
actions of the defendant that show an understanding and common design to commit
the offense.  Ransom v. State, 920
S.W.2d 288, 302 (Tex. Crim. App. 1994). 
Although the mere presence of an accused at the scene of an offense is
not alone sufficient to prove that a person is a party to the offense, it is a
circumstance tending to prove guilt, which, combined with other facts, may
suffice to show that the accused was a participant.  Beardsley v. State, 738 S.W.2d 681,
685 (Tex. Crim. App. 1987); Barnes v. State, 62 S.W.3d 288, 297 (Tex.
App.CAustin
2001, pet. ref=d).

                                                                  Issue
on Appeal

In a sole appellate issue, appellant asserts that
the evidence was legally insufficient to support his conviction for the
following reasons:  (1) there was no testimony
that the actions of appellant placed anyone in fear of imminent bodily injury
or death and (2) there was no evidence that appellant knew Sanders was going to
use a gun in the course of robbing Elliot. 
The State asserts that the evidence was legally sufficient to convict
appellant of aggravated robbery under the law of parties. 

                                                              Standard
of Review

In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  The jury, as the trier of fact,
is the sole judge of the credibility of the witnesses and of the weight to be
given to their testimony.  Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon
1979).








                                                             The
Evidence at Trial

            On April 14,
2004, Elliot was working at her job as the night auditor for the Holiday Inn
and Suites.  She testified that, at about
5:00 a.m., two men entered the Holiday Inn. 
Elliot said that one of the men approached the front desk and asked her
about room rates while the other man walked around in the lobby.  Elliot told the man the room rates, and the
man told her that he wanted to check some other places and that the men might
be back later.  Elliot said that the men
left the Holiday Inn. Although Elliot did not identify the men by name in her
testimony, the evidence at trial demonstrated that Sanders was the man who
asked Elliot about room rates and that appellant was the man who walked around
in the lobby.  The evidence also
demonstrated that Sanders was wearing a blue jumpsuit, also referred to in the
record as coveralls.

About twenty minutes later, appellant and Sanders
returned to the Holiday Inn.  Elliott
testified that the man wearing the blue jumpsuit (Sanders) came to the front
desk and said, AWe are
going to get the room.@  She said that she did not see appellant Aright off@
because she could not see him from where she was standing.  Elliot said that Sanders pulled a gun out of
his pocket, pointed the gun at her, and said, AGive
me the money.@  Elliot testified that she was afraid and in
fear of imminent bodily injury or death. 
She said that she handed Sanders a work bag with $200 inside of it.  She also said that she did not give Sanders
and appellant consent to take the money. 
Rather, she gave the money to Sanders because he had a gun in her
face.  Elliot said that Sanders made her
walk down to the end of the counter and, at that time, she saw appellant.  Elliot testified that Sanders continued to
point the gun at her and told her Anot
to go for the phone too fast or they would come back and get [her].@ 
Elliot said that she did not know whether appellant could have heard the
discussion between Sanders and her. 
Elliot said that Sanders and appellant left the hotel together.








Surveillance cameras at the Holiday Inn recorded
both incidents.  The State introduced
into evidence the videotape, which included audio sound, and the videotape was
played for the jury.  The incidents
depicted in the videotape were consistent with Sanders=s
testimony.  With respect to the 5:00 a.m.
incident, the videotape showed, among other things, the following: Sanders and
appellant entering the Holiday Inn; Sanders approaching the front desk and talking
with Elliot; appellant walking around and looking around in the lobby area;
Sanders walking over and talking with appellant after Sanders talked with
Elliot; Sanders walking back to Elliot and talking with her; and Sanders and
appellant leaving the Holiday Inn together.

With respect to the 5:20 a.m. incident, the
videotape showed, among other things, the following: Sanders and appellant
entering the hotel; Sanders approaching Elliot and demanding the money;
appellant standing inside the Holiday Inn and looking outside the front doors;
appellant bending over while apparently looking for something on the floor;
Sanders telling Elliot not to call the police too fast; and appellant leaving
the hotel, followed closely by Sanders. 
The audio sound for the videotape indicated that Elliot gave Sanders
$200.

Midland Police Officer Cameron Garner Ramsey was
the first officer on the scene at the Holiday Inn after the robbery.  She testified that, when she arrived at the
scene, Elliot was shaken, crying, scared, and pretty distraught.  Officer Ramsey said that she viewed the
videotape and that, based on the videotape, she was able to get a description
of the suspects.  She said that two patrol
sergeants arrived at the scene and that they helped her broadcast the description
of the suspects.

Midland Police Officer Steven Sanders heard the
description of the suspects in the Holiday Inn robbery on his radio.  He testified that, at about 4:30 a.m. that
morning, he had helped three men who had run out of gas in a 1992 Lincoln Town
Car on Florida Street
.  Officer Sanders said that the description of
the robbery suspects indicated that they were dressed like two of the
individuals he had helped on Florida
 Street
. 
Officer Sanders ran a license plate check on the 1992 Lincoln Town Car,
and it came back to a AWillie
Leonard.@  The evidence demonstrated that Leonard was
appellant=s nephew.

A camera in Officers Sanders=s patrol car recorded the incident in
which Officer Sanders helped the men who had run out of gas.  The State introduced into evidence a copy of
the videotape, and the videotape was played for the jury.  The videotape showed Officer Sanders driving
up to three men who were pushing a car toward a convenience store or gas
station that was a short distance away from them.  The videotape also showed Officer Sanders getting
out of his patrol car and helping the men push the car to a gas pump.  Officer Sanders testified that the videotape
showed appellant, Sanders, and Leonard.








Midland Police Detective Darin Clements arrived at
the Holiday Inn after the robbery.  He
testified that he reviewed the videotape of the robbery.  Detective Clements said that the officers
searched for Leonard and located Leonard=s
car at the Norris Apartments.  He said
that, as he and another officer approached the car, they noticed that appellant
was sleeping in the backseat.  Detective
Clements testified that appellant was wearing the same clothes that the Alookout@
man was wearing in the Holiday Inn videotape. 
When asked what he meant by Alookout,@ Detective Clements said that the
videotape showed the man standing by the front door, looking out the front
door, looking down the hallway, and basically watching out for the subject who
was holding up the lady. He said that the Alookout@ could have warned the subject holding up
the lady if someone was coming. 
Detective Clements testified that the Alookout@ man in the videotape was aiding or
attempting to aid the commission of a crime.

Detective Clements testified that he and another
officer woke appellant up and asked him about Leonard.  Appellant told them that Leonard was in
Apartment A.  The officers  found Leonard and Sanders inside Apartment A
and then took appellant, Sanders, and Leonard into custody.  Detective Clements said that Sanders was not
wearing the same clothes that he had worn at the Holiday Inn.  Detective Clements said that the gun Sanders
used during the Holiday Inn robbery was a firearm and a deadly weapon.

Midland Police Detective Peter Dehlinger arrived
at the Norris Apartments after the officers detained appellant, Leonard, and
Sanders.  Detective Dehlinger testified
that patrol officers transported appellant to the police station.  At that time, officers were looking for the
blue jumpsuit that Sanders had worn and the gun that Sanders had used during
the robbery.  Detective Dehlinger
testified that he asked appellant about the gun and the jumpsuit that were used
in the robbery.  During direct
examination, Detective Dehlinger said appellant told him Sanders had put the
gun and the jumpsuit into a car in the backyard of Sanders=s father=s
house located at 713 South Lincoln. 
However, during cross-examination, Detective Dehlinger testified that he
could not recall whether appellant specifically used the word Agun@
when appellant was asked about the gun and the jumpsuit.  Detective Dehlinger also testified that he
located Sanders=s father=s house with appellant=s help and that officers received
consent from Sanders=s
father to search the backyard.  He said
that officers found the gun and the jumpsuit inside a Honda that was parked in
the backyard.








 Detective
Dehlinger took a recorded statement from appellant.  Detective Dehlinger testified that appellant
told him the following in the statement: that appellant admitted to being at
the door in the Holiday Inn; that he did not know whether Sanders had used a
gun at the Holiday Inn; that he had not seen a gun; that Sanders had lied about
the reason for wanting to go to the Holiday Inn; that Sanders had said he
wanted to go to the Holiday Inn to get a girl and a room; that he had not seen
Sanders for a number of years before the date of the robbery; and that Sanders
had $80 to $100 when they went to the Holiday Inn.

Midland Police Detective Charles Sims testified
that he viewed the videotapes from Officer Sanders=s
vehicle and from the Holiday Inn.  He
said that the videotape of the Holiday Inn robbery showed appellant standing
near the front doors as if he were posted at that position.  He also said that it is common for a lookout
to look out the doors to make sure nobody is coming to the scene. Detective Sims
testified that he asked appellant where the gun was that was used in the
robbery.  He said that appellant told him
the gun was in a Honda next to the Norris Apartments.  Detective Sims and Detective Fraley looked for
the Honda but they could not find it. 
Detective Sims said that he and Detective Fraley asked Detective
Dehlinger to bring appellant to the scene and that appellant directed the
officers to Sanders=s father=s house.  Detective Sims testified that, after Sanders=s father consented to a search, he
opened the door of the Honda and saw the blue coveralls inside the car.  He said that, as he was pulling the coveralls
out of the car, a revolver fell out of the coveralls and onto the ground.

Midland Police Department Identification
Specialist Larry Shackelford arrived at Sanders=s
father=s house
and photographed the evidence that was discovered during the search.  At trial, Identification Specialist
Shackelford identified the coveralls and the gun that Detective Sims found
during the search.  The State introduced
into evidence the coveralls and the gun.

Appellant testified that, on the night of the incident
at the Holiday Inn, he and Leonard ran out of gas in Leonard=s vehicle.  He said that Officer Sanders helped them push
the car.  He also said that Sanders
walked from across the street and helped them push the car.  Appellant testified that he recognized
Sanders from having gone to school with him but that he had not seen Sanders in
the last thirty or thirty-five years. 
Appellant testified that Sanders offered to give them $3 for gas if they
would take him to the Holiday Inn to meet his boss.  Appellant said that they used the $3 for gas
and that Leonard drove them to the Holiday Inn.








With respect to the first incident at the Holiday
Inn, appellant testified that he went inside the Holiday Inn and stood by the
front door.  He said that he walked to
the restaurant and to the swimming pool. 
He testified that Sanders asked the hotel clerk about the cost of a
room.  Appellant said that Sanders asked
him if he wanted to rent a room and that he responded that he did not want to
rent a room.  Appellant said that he and
Sanders left the Holiday Inn and got back into Leonard=s
car.  Appellant testified that he wanted
to go home and that Leonard headed for home but that Sanders convinced Leonard
to go back to the Holiday Inn.  He said
that Sanders told them he was still looking for his boss.

With respect to the second Holiday Inn incident,
appellant testified that he did not go inside the Holiday Inn.  Rather, appellant said that he stood at the
entrance of the hotel and looked for an aspirin that he had dropped on the
floor during the first Holiday Inn incident. 
However, the videotape of the incident showed appellant standing inside
the Holiday Inn.  Appellant said that he
did not hear what Sanders and the clerk were saying.  He said that he had no idea Sanders had
pulled out a weapon and that he did not know Sanders was attempting to rob the
clerk.  He testified that Sanders had
lied to them about the reason for going to the Holiday Inn.  He said that Sanders told them that he was
going to meet his boss to pick up some money and then they could meet some
girls and get a room.

Appellant further testified that, after the second
Holiday Inn incident, they left the hotel and drove to a location where Sanders
took off his work coveralls.  He said
that Sanders left the coveralls in a backyard. 
Appellant testified that Leonard drove toward the Norris Apartments.  Appellant said that he fell asleep in the
backseat of the car while they were on their way to the apartments and that he
continued to sleep in the car after Leonard parked it at the apartments.  Appellant testified that the police woke him
up.  He said that he showed the police
officers the location where Sanders had left the coveralls.  He also said that he never saw a gun and
never mentioned a gun to the police officers. 


                                                                        Analysis









Viewing the evidence in its entirety, the evidence
was legally sufficient to support appellant=s
conviction under the law of parties. 
Based on the evidence, a rational trier of fact could have concluded
that appellant acted with the intent to assist the commission of the offense by
aiding or attempting to aid Sanders in committing the offense and that
appellant aided or attempted to aid Sanders in using the gun to threaten
Elliot.  The evidence established that
appellant and Sanders were together before, during, and after the robbery at
the Holiday Inn.  They arrived at the
Holiday Inn together on two occasions. 
They exited the hotel together on the first occasion and appellant
exited the hotel, followed closely by Sanders, on the second occasion.  During the first incident at the Holiday Inn,
appellant walked around in the lobby area of the hotel and familiarized himself
with the area.  The jury could have
concluded that appellant and Sanders gathered information during the first incident
as part of a plan to come back and rob the hotel and that appellant and Sanders
continued to plan the robbery after they left the hotel on the first occasion.

During the second incident, as Sanders robbed
Elliot and pointed a gun at her, appellant stood watch inside the front doors
of the Holiday Inn.  The videotape of the
robbery showed appellant looking out the front doors of the hotel.  The testimony of Detectives Clements and Sims
supported a conclusion that appellant acted as a lookout man for Sanders during
the robbery.  Detective Clements
testified that the Alookout@ in the videotape stood by the front
door, looked out the front door, looked down the hallway, and basically watched
out for the man holding up the lady. 
Detective Sims stated that it is common for a lookout man to look out
the doors to make sure nobody is coming to the scene.  After the robbery, appellant left the hotel,
followed closely by Sanders.  Appellant
and Sanders got into Leonard=s
car after the robbery, and they stayed together until they arrived at the
Norris Apartments.  Detective Sims
testified that he asked appellant where the gun was that had been used during
the robbery and that appellant told him the gun was in a Honda next to the
Norris Apartments.  The officers found
the gun in the Honda.  Although appellant
testified that he never mentioned a gun to the police, the jury, as the sole
judge of the credibility of the witnesses and of the weight to be given to
their testimony, was entitled to accept Officer Sims=s
testimony and to reject appellant=s
testimony.  Articles 36.13, 38.04; see
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).  Based on the evidence (1) that appellant and
Sanders were together before, during, and after the robbery; (2) that appellant
was present at the scene during the robbery; (3) that appellant acted as a
lookout during the robbery; and (4) that appellant told Detective Sims where
the gun was after the robbery, a rational trier of fact could have concluded
that appellant knew Sanders planned to use the gun and actually used the gun
during the commission of the robbery. 








The State did not have the burden to prove that
appellant pointed the gun at Elliot. 
Rather, the State had the burden to prove that appellant was guilty of
the aggravated robbery under the law of parties.  Elliot testified that she was in fear of
imminent bodily injury or death when Sanders pointed the gun at her.  The evidence was legally sufficient to
establish appellant was a party to the aggravated robbery by acting with the
intent to assist the commission of the offense by aiding or attempting to aid
Sanders in committing the offense.  See
Johnson v. State, 6 S.W.3d 709, 711 (Tex. App.CHouston
[1st Dist.] 1999, pet. ref=d)
(holding that evidence was sufficient to support conviction for aggravated
robbery under law of parties where the defendant performed reconnaissance of
the robbery location before the robbery and drove the getaway car); Brewer
v. State, 852 S.W.2d 643, 647 (Tex. App.CDallas
1993, pet. ref=d)
(holding that evidence was sufficient to support conviction for aggravated
robbery under the law of parties where the defendant dropped off his accomplice
and picked up the accomplice shortly after the shooting); Cumpian v. State,
812 S.W.2d 88, 90 (Tex. App.CSan
Antonio 1991, no pet.) (holding that evidence was sufficient to support
conviction for burglary of a building under the law of parties where the
defendant appeared to be the Alook-out
person@).  We overrule appellant=s
issue.

This Court=s
Ruling

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

July 26, 2007

Do not
publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.