In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-366 CR


____________________



COLETTE ANGELA RICHNOW, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 06-09-09387-CR






MEMORANDUM OPINION


 Colette Angela Richnow challenges the legal and factual sufficiency of the evidence
supporting her conviction and life sentence for two counts of capital murder. Richnow
argues the State failed to prove that Richnow was present at the victims' home when the
murders occurred or that she solicited, encouraged, aided, or directed Terry Wilkerson to
commit the murders in the course of committing a burglary of a habitation. The State argues
Richnow is criminally responsible for the murders committed by Wilkerson, either because
she committed the offenses, aided Wilkerson in the commission of the offenses, or Richnow
was a conspirator in the commission of the burglary and the murders were committed by
Wilkerson in furtherance of the burglary.

 In assessing the legal sufficiency of the evidence to support a criminal
conviction, we consider all the evidence in the light most favorable to the
verdict and determine whether, based on that evidence and reasonable
inferences therefrom, a rational juror could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Powell v. State, 194 S.W.3d
503, 506 (Tex. Crim. App. 2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex.
Crim. App. 2004). The reviewing court must give deference to "the
responsibility of the trier of fact to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts." Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781. In reviewing the
sufficiency of the evidence, we should look at "events occurring before, during
and after the commission of the offense and may rely on actions of the
defendant which show an understanding and common design to do the
prohibited act." Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App.
1985). Each fact need not point directly and independently to the guilt of the
appellant, as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction. See Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[i]t is not necessary that every
fact point directly and independently to the defendant's guilt; it is enough if the
conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances."); Barnes v. State, 876 S.W.2d 316, 321 (Tex.
Crim. App. 1994); Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App.
1987). Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt. Guevara, 152 S.W.3d at 49. On appeal, the same
standard of review is used for both circumstantial and direct evidence cases. 
Id.


Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).


 In addressing a factual sufficiency claim, we review the evidence in a
neutral light rather than the light most favorable to the verdict. Evidence is
factually insufficient if the evidence supporting the verdict is so weak that the
verdict seems clearly wrong and manifestly unjust, or if the supporting
evidence is outweighed by the great weight and preponderance of the contrary
evidence so as to render the verdict clearly wrong and manifestly unjust. We
do not reverse for factual insufficiency if the greater weight and preponderance
of the evidence actually favors conviction.


Neal v. State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), petition for cert. filed, (U.S.
Sept. 16, 2008) (No. 08-6413) (footnotes omitted). In conducting a factual-sufficiency
analysis, we must be cognizant of the fact that a jury has already passed on the facts and must
give due deference to the determinations of the jury. See Lancon v. State, 253 S.W.3d 699,
704-05 (Tex. Crim. App. 2008).

 Both legal and factual sufficiency standards require the reviewing court
to consider all of the evidence. "The difference between the two standards is
that the former requires the reviewing court to defer to the jury's credibility
and weight determinations while the latter permits the reviewing court to
substitute its judgment for the jury's on these questions 'albeit to a very limited
degree.'" In reality, a "factual-sufficiency review is 'barely distinguishable'
from a Jackson v. Virginia legal sufficiency review."


Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007)(footnotes omitted).


 The jury charges in this case authorized the jury to find Richnow guilty of capital
murder if she acted as a principal, as a party under Section 7.02(a) of the Penal Code, or as
a conspirator under Section 7.02(b) of the Penal Code. See Tex. Pen. Code Ann. § 7.02(a),
(b) (Vernon 2003). A person is criminally responsible for an offense committed by the
conduct of another if, acting with intent to promote or assist the commission of the offense,
she solicits, encourages, directs, aids, or attempts to aid the other person to commit the 
offense. Id. § 7.02(a)(2). Further, if "[i]n the attempt to carry out a conspiracy to commit
one felony, another felony is committed by one of the conspirators, all conspirators are guilty
of the felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have been 
anticipated as a result of the carrying out of the conspiracy." Id. § 7.02(b). The verdict of
guilt will be upheld if the evidence is sufficient on any of the three theories of criminal
responsibility submitted to the jury in the charge. See Sorto v. State, 173 S.W.3d 469, 472
(Tex. Crim. App. 2005).

 A neighbor testified that he last saw one of the murder victims alive on the morning
of January 22, 2006. Early the next morning, January 23, 2006, the neighbor watched the
victims' van move down the street. He recalled that the vehicle was scheduled to be taken
to the shop. About thirty minutes later, he noticed that the van was back. A person drove
the victims' pickup truck out, got out and closed the gate, then returned to the truck. Both
the van and the truck "peeled out" at the same time. The vehicles moved far faster than was
customary, but the neighbor was not immediately concerned because he assumed his
neighbor had returned with the mechanic. It was approximately 7:30 a.m. His wife tried
without success to call the victims several times that day. At 10:00 p.m., the neighbor
became concerned because a light had been uncustomarily left on at the victims' home. At
approximately 6:45 the next morning, the neighbor peeked in the glassed doors and
discovered the murders. The rear door showed signs of forced entry.

 A pathologist testified that both victims died from gunshot wounds to the head. A
glove was recovered from under the body of one of the victims. The entire house had been
ransacked. Both of their vehicles, a Dodge Caravan and a Dodge Dakota pickup truck with
handicap parking plates, had been stolen. Information on the vehicles was entered into a
stolen-vehicle database. The truck was recovered in Houston around 1:20 a.m. the next
morning. The occupants of the vehicle provided information that lead the officers to obtain
arrest warrants for Wilkerson and Richnow. Richnow and Wilkerson were apprehended in
a room registered to Richnow at the Greenway Inn & Suites in Houston. The van was
recovered from in front of Richnow's room at the Greenway. The key was found on the
nightstand in the hotel room that Richnow shared with Wilkerson. The items recovered from
the victims' van included a bloodstained pair of tennis shoes, a cola can, and another glove. 
A substantial amount of jewelry was recovered from Richnow's hotel room at the Greenway. 
Some of the jewelry was found in a white pillowcase under the bed and some was found
behind an access panel under the sink. A camera, credit cards, drivers' licenses, a
checkbook, a voter registration card, a wallet, and other personal items belonging to the
victims were also found in Richnow's hotel room. A .38 revolver, a .45 pistol, live rounds
and spent casings were found in the room. Police also discovered drugs and drug
paraphernalia that had been hidden in the room. A bloody white muscle shirt and pants were
recovered from the top shelf of the closet.

 In an interview with a detective conducted on January 25, 2006, Richnow stated that
she lived with her parents at an address in New Caney located approximately one-half mile
from the victims' home. On January 17, 2006, Richnow checked into the Kingsway Inn in
New Caney. The Kingsway is located very close to the homes of Richnow's parents and the
murdered couple. During her interview, Richnow stated that Terry Wilkerson is her
boyfriend, that Wilkerson had recently been released from confinement, and his brother
rented the room for one week for Wilkerson and Richnow. Richnow stated that they left the
room a day early because Wilkerson had work to do for Eddie at Alcon Lighting. She
claimed they used Eddie's money to check into a room at the Greenway Inn & Suites in
Houston. A receipt from the Greenway showed Richnow checked into the hotel at 10:58 a.m.
on January 23, 2006. Richnow claimed she and Wilkerson obtained a light-colored minivan
from Eddie while they were staying at the Greenway. Richnow also claimed that Wilkerson
had the van when he picked her up at the Kingsway. She denied that they had access to a
small gray pickup truck during this time and she could not recall having met a couple with
the names of the people who were in the truck when it was found. Richnow told the
detective that she had been doing drugs all week. She claimed that someone named John
obtained a key to her room at the Greenway and stuck needles in her arm several times the
day before (January 24), and that she did not recall most of that day.

 Richnow's account of her activities and whereabouts the week of the murders failed
to withstand scrutiny. Eddie Morrow testified that he runs a lampshop named Alcon
Lightcraft. Morrow had known Wilkerson for years from around the neighborhood, but
Wilkerson had never worked for him. Morrow never owned a Dodge pickup truck or a
minivan and never loaned Wilkerson a vehicle to use.

 A guest staying at New Caney's Kingsway Inn Hotel from January 23, 2006, through
January 25, 2006, testified that while standing in the doorway to her room she saw Richnow
driving a silver van that matched the description of the victims' van. The guest saw
Wilkerson driving a silver truck with handicap plates. She watched Richnow go into the
hotel room, pack her things and place them in the van, then leave in a hurry. When she saw
the news report that described the murders and the vehicles, the guest realized she had seen
the vehicles the morning of the murders. The guest ran out to the road, flagged down an
officer, and told the officer she had seen Richnow and Wilkerson leave in the stolen vehicles
at about 10:30 or 11:30 a.m.

 Richnow had registered at the Kingsway on January 17, 2006; a man who was not
Wilkerson paid in advance for one week's rent. An employee of the Kingsway testified that
she noticed Wilkerson drive up to the hotel in a light-colored pickup truck, watched as
Wilkerson and Richnow packed up their possessions and left the hotel. They had another day
of paid rent on the room but left a day early. Wilkerson left in the truck; Richnow left but
did not get in the truck with Wilkerson. Richnow was wearing a cream-colored polyester
blazer-pantsuit. She was barefoot and the pants were very muddy. The pantsuit did not fit
Richnow and looked like something an older person would wear.

 A witness testified that she was walking in front of the Western Inn off Interstate 45
and Airline in Houston on January 23, 2006. Richnow and Wilkerson picked her up in a
small gray Dodge pickup truck. Richnow and Wilkerson had money and crack cocaine and
negotiated a deal for the witness to accompany them to their hotel room for sex and drugs. 
The witness gathered her syringes and went with Richnow and Wilkerson to the Greenway. 
She injected cocaine into Richnow and herself. Richnow asked the witness to go outside
with her so she could get some clothes. She accompanied Richnow to a light blue Astrovan. 
Richnow reached around the front seat and grabbed a handful of jewelry out of a box. 
Richnow took clothes and jewelry out of the van. Wilkerson took a revolver out from under
the mattress and tucked the gun in his waistband. The three took the Dodge pickup truck to
the Fifth Ward, where Richnow purchased crack cocaine. The three proceeded to the Spring
Branch hotel room of the witness's boyfriend's and the four smoked cocaine while Richnow
looked through a checkbook that contained an older woman's identification card. Wilkerson
asked the witness if she could do something with credit cards that he had. The four of them
returned to the Greenway and ingested more cocaine. Richnow and Wilkerson had recently
purchased cellular telephones. Richnow was making telephone calls but could not find a
connection for more cocaine. Wilkerson gave the witness's boyfriend $50 and the keys to
the pickup truck and the witness and her boyfriend drove off in the truck in search for more
cocaine. The police arrested them in the pickup truck before they could return to the
Greenway. At no time did Richnow appear to be afraid. According to the witness, Richnow
acted as though she did not have a "care in the world."

 A woman confined in the jail cell next to Richnow testified that Richnow spoke to her
about the offense. Richnow told the witness that "they ran out of dope and they needed more
money and they went over there to rob her Godparents." Richnow told the witness that the
victims recognized her as soon as she walked in the house. Richnow claimed that Wilkerson
killed them and "she was just there to steal their stuff."

 The projectile recovered from the male victim could neither be identified nor
eliminated as having been fired from the .45 seized at the Greenway. The size, diameter of
the bullet, and the rifling matched. Shell casings found in the hotel room were conclusively
identified as having been fired from the .45. A projectile found in the entryway to the
victims' upstairs bedroom that exited the female victim also could neither be identified nor
eliminated as having been fired from the .38 seized at the Greenway, but the size, diameter
of the bullet, and the rifling did match. A spent shell casing found in the hotel room had
been fired from the .38.

 DNA testing of a blood swab on the .38 showed a mixture of DNA from which the
male victim could not be excluded from a majority of the profile and neither Wilkerson nor
Richnow could be excluded as contributors to the mixture. The demographic probability for
Richnow's profile was one in four among Caucasians. The victims' DNA was recovered
from other parts of the blood-spattered .38. DNA detected on the trigger and grip of the .38
matched Wilkerson in thirteen locations and Richnow in five locations. The demographic
probability for Richnow on the trigger sample was 1 in 46 for Caucasians. The statistics for
Richnow on the grip sample was 1 in 202 for Caucasians. DNA detected on the grip of the
.38 matched Wilkerson in eleven locations and Richnow in four locations. DNA testing of
the bloody white muscle shirt had a statistical probability of 1 in 48.4 trillion for Caucasians
in the spots where Richnow's DNA was found. Although the male victim was the primary
contributor, the glove found under the female victim had Richnow's DNA in it. The
demographic probability for Richnow was only 1 in 54 for Caucasians. The towel with
eyeholes found in the van had Richnow's DNA on it to a statistical probability of 1 in 40.42
million for Caucasians. DNA samples taken from clothing found in the van matched
Richnow's profile. A statistical finding of 1 in 296 billion would enable the expert to
identify a person to a scientific certainty. For the evidence with lower statistical
probabilities, the findings indicated only that Richnow could not be excluded as a
contributor. Richnow's fingerprint was found on the cola can recovered from the victims'
van.

 Richnow seeks to distinguish cases in which the evidence supported a theory of party
responsibility for driving the getaway car because she was not seen leaving the victims'
home. See Escobar v. State, 28 S.W.3d 767, 774 (Tex. App.--Corpus Christi 2000, pet.
ref'd); Johnson v. State, 6 S.W.3d 709, 711 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd);
Brewer v. State, 852 S.W.2d 643, 647 (Tex. App.--Dallas 1993, pet. ref'd). Because
Wilkerson was present in the hotel room where she and Wilkerson were arrested, Richnow
also seeks to distinguish cases in which the accused is found in possession of the victims'
property. See Madden v. State, 799 S.W.2d 683, 691 (Tex. Crim. App. 1990); Rector v.
State, 738 S.W.2d 235, 240-41 (Tex. Crim. App. 1986); O'Pry v. State, 642 S.W.2d 748,
760-61 (Tex. Crim. App. 1982).

 The circumstantial evidence and her own admissions place Richnow at the scene of
the crime. The DNA evidence placed her in the van. Richnow argues her presence in the
van does not prove she participated in the murders. There is, however, other evidence that
Richnow assisted Wilkerson in the burglary and the murders. Richnow admitted to another
confinee that Richnow and Wilkerson went to the victims' home to rob them and that the
victims immediately recognized her. Two vehicles were simultaneously driven away from
the crime scene; therefore, an accomplice must have been present. Although the witness who
saw the vehicles leave the scene did not see who was driving the van, shortly thereafter
Richnow was driving the van very near the crime scene. Richnow behaved suspiciously. She
checked out of a room that had been paid for, immediately checked into a room at another
hotel farther from the crime scene, and did not provide a truthful explanation for her actions. 
Shortly after the murders Richnow was in possession of property that belonged to the
victims. The firearms used in the offense were found in her room. DNA analysis tied
Richnow to some of the bloody clothing found in the victims' van. Consistent with her stated
motive for the burglary, Richnow spent the next day ingesting cocaine. Viewing the
evidence in the light most favorable to the prosecution, the jury could rationally find that
Richnow either assisted Wilkerson in committing the offense or she conspired with
Wilkerson to commit the burglary and Wilkerson committed the murders in furtherance of
the burglary, a result that Richnow should have anticipated. See Hooper, 214 S.W.3d at 13.

 Richnow contends the evidence is too weak to support the verdict because the only
testimony that she admitted to participating in the offense was supplied by a convicted felon
who lacked credibility. In conducting a factual sufficiency review, we must give "almost
complete" deference to the jury's determination of credibility. See Lancon, 253 S.W.3d at
705. The witness's testimony was suspect for reasons that were explored at length before the
jury. For instance, the jury was aware that the witness had been convicted of arson and
fabricating evidence. The jury was also aware that the witness's cellmate contradicted the
witness's claim that she had not seen a television news story about the murders. The jury had
also learned that Richnow was driving the victims' van shortly after two drivers left the
murder scene, the van had bloody clothing in it, Richnow exercised control over the victims'
property, and she spent the day following the murders consuming cocaine with the person
she concedes is the triggerman. The witness's testimony is consistent with the physical
evidence and it was for the jury to determine whether she was lying or telling the truth. Id.
at 707.

 Richnow argues that the evidence supporting the verdict is insufficient because DNA
evidence did not establish to a scientific certainty that Richnow was present in the victims'
home at the time of the murders. The partial DNA profiles found on various items of
evidence were consistent with Richnow's profile and did not rule her out as a possible
contributor. Viewing all of the evidence in a neutral light, the evidence is not so weak as to
render the verdict clearly wrong and manifestly unjust. See Neal, 256 S.W.3d at 275. We
overrule issues one and two and affirm the judgment.

 AFFIRMED.


 ____________________________

 STEVE McKEITHEN

 Chief Justice

Submitted on November 3, 2008

Opinion Delivered December 3, 2008

Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.